MONICA Y. KIM (SBN 180139)
JULIET Y. OH (SBN 211414)
LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: myk@lnbrb.com, jyo@lnbrb.com

Proposed Attorneys for Chapter 11 Debtor
and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:10-bk-10642-VZ |
| CENTRAL METAL, INC., a California corporation, | Chapter 11 |
| Debtor. | **APPLICATION OF DEBTOR AND DEBTOR IN POSSESSION TO EMPLOY C.T. MOFFITT & COMPANY AS FINANCIAL CONSULTANTS AND CHARLES T. MOFFITT AS CHIEF RESTRUCTURING OFFICER; DECLARATION OF CHARLES T. MOFFITT, ESQ. IN SUPPORT THEREOF**<br><br>[No Hearing Required – Local Bankruptcy Rule 2014-1(b)] |

Central Metal, Inc., a California corporation, Chapter 11 debtor and debtor in possession herein (the "Debtor"), hereby submits this application (the "Application") for Court approval of its employment of C.T. Moffitt & Company ("CTMC") as financial advisors and Charles T. Moffitt ("Moffitt") as Chief Restructuring Officer to the Debtor ("CRO"), effective as of the

1

1    Debtor's Chapter 11 filing date of January 8, 2010 and upon the terms and conditions described

2    below. In support of this Application, the Debtor respectfully represents as follows:

3    A.    Case Background

4        1.    The Debtor commenced its bankruptcy case by filing a voluntary petition under

5    Chapter 11 of 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") on January 8, 2010 (the "Petition

6    Date"). The Debtor continues to operate its business, manage its financial affairs and operate its

7    bankruptcy estate as a debtor in possession pursuant to Sections 1107 and 1108 of the

8    Bankruptcy Code.

9        2.    The Debtor is a fully integrated scrap metal processing company that purchases,

10   processes and sells ferrous and non-ferrous metals domestically and internationally. The Debtor

11   is one of the largest processing companies on the West Coast, has one of the largest land sites

12   and processing capacities, and is fully diversified in its business portfolio that entails dynamic

13   trading relationships with renowned metal manufacturers around the world.

14       3.    The Debtor currently operates out of five (5) active facilities throughout Southern

15   California – two facilities in the Los Angeles County area, one facility in Hinkley, one facility in

16   San Bernardino, and one facility in Bakersfield. The Debtor was founded in 1993 by Jong Uk

17   Byun ("Byun"), the sole shareholder and President of the Debtor.

18   B.    Employment of Financial Advisors and CRO

19       4.    The largest and primary secured creditor of the Debtor is Center Bank ("Center").

20   Pre-petition, Center made a number of loans to the Debtor in the total principal amount of

21   approximately $16.8 million. As of the Petition Date, Center was owed approximately $16.3

22   million. Center's claim is secured by substantially all of the Debtor's assets which include real

23   property. Around May 2009, the Debtor stopped making its monthly payments to Center which

24   were approximately $120,000 per month.

25       5.    Upon its default, the Debtor attempted to restructure its payment obligations to

26   Center. The parties successfully negotiated and entered into a forbearance agreement, but the

27

28

2

1   Debtor was ultimately unable to perform on the terms of such agreement. Notwithstanding this,
2   the parties continued to discuss the plight of the Debtor's situation.

3      6.      In December 2009, and while Center was continuing to have a dialogue with
4   Center, Center instructed the Debtor to engage Focus Management Group ("Focus") as its
5   financial advisors to review the Debtor's financial data and operations. Members associated with
6   Focus came on-site at the Debtor, and received a tremendous amount of requested information,
7   documents, data and reports. The main on-site personnel of Focus was Edmund C. King
8   ("King").

9      7.      Without any advance notice or warning, on or about January 6, 2010, Center filed
10  a complaint against the Debtor, Byun, and other related defendants, and on the morning of
11  January 7, 2010 (before the complaint had been served), Center's counsel provided telephonic
12  notice of an *ex parte* hearing scheduled for 8:30 a.m. on January 8, 2010 for the appointment of a
13  receiver over the properties of all of the defendants, including the Debtor. The Debtor filed its
14  Chapter 11 case on an emergency basis to avoid the possibility of a receiver being appointed
15  over its properties, and reorganize.

16     8.      As part of its *ex parte* application for the appointment of a receiver, Center filed
17  with the state court several declarations, including a declaration for King. King states in his
18  declaration that: (a) accounting records or details regarding cash payments totaling $17.8 million
19  were "lost" by the Debtor, (b) that the Debtor's accounting practices are "severely lacking and
20  unsophisticated" and (c) Byun wanted to give him a cash gift (which was not accepted). Counsel
21  for Center has characterized this "gift" as an attempted bribe. The Debtor vigorously disputes
22  such allegations.

23     9.      In the ordinary course of its business, the Debtor transacts much of its business
24  dealings in cash. Because a large amount of the Debtor's scrap metal comes from individual
25  "peddlers" who simply drive up to the Debtor's business locations in pick-up trucks with scrap
26  metal (which the Debtor then processes into usable steel) to sell, the Debtor pays for such metal
27  in cash. Cash transactions are expected and very commonplace for this business and industry,
28

and if news spread around town that the Debtor pays for purchases with a check, then peddlers would elect to go to a different scrap metal dealer in town. In short, the Debtor's access to scrap that is essential to sales would be severely impaired if it is not allowed to continue to pay in cash for scrap metal.

10.    The cash nature of the Debtor's business and the current state of the Debtor's books and records have given rise to a variety of concerns by Center which need to be addressed in this case. In addition, the Debtor is aware that being in Chapter 11, as well as transitioning into Chapter 11 as a debtor in possession, are complex matters with extensive reporting and disclosure requirements. Based on all of these factors, the Debtor has determined that it would be in the best interests of this estate to employ a financial advisor and a CRO in this case. Towards that end, the Debtor believes that CTMC is highly qualified for the tasks needed to be achieved by this estate.

11.    CTMC is a management consulting and interim management firm that was founded in 1985. CTMC has extensive experience assisting companies in transition, ranging from startups to well established enterprises in need of fresh perspective, to companies on the brink of and/or in bankruptcy. Using the broad experience of its principals and allied consultants, CTMC provides services in the areas of corporate performance improvement, turnaround management, financial restructuring and interim management. CTMC has served a variety of industries including, among others, specialty retail, steel manufacturing and fabrication, computer hardware and software, consumer electronics, telecommunications, entertainment and real estate. CTMC has been engaged as financial advisors, turnaround/restructuring consultants and interim management in numerous chapter 11 bankruptcy cases.

12.    The Debtor and CTMC have entered into a retainer agreement, effective as of the Petition Date, pursuant to which CTMC has agreed to serve as financial advisors to the Debtor and I have agreed to serve as the Debtor's CRO. A true and correct copy of the foregoing

4

1  retainer agreement is attached as Exhibit "A" to the Declaration of Charles T. Moffitt annexed

2  hereto (the "Moffitt Declaration").

3      13.    As part of its engagement, and effective as of the Petition Date, Moffitt will serve

4  the Debtor as its CRO. The duties of Moffitt and CTMC shall include:

5          ■   promptly undertaking an independent analysis and review of the Debtor's

6             business and operations, including the Debtor's cash management and financial

7             and accounting controls of the business;

8          ■   ensuring the proper reporting and depositing into the debtor in possession bank

9             accounts of all collections and payments including any cash collections or

10            payments;

11         ■   overseeing and reviewing the preparation of all financial data and reports

12            including the Debtor's cash flow projections; and

13         ■   providing all other financial advisory, turnaround and restructuring services as

14            needed by the Debtor.

15     14.    In addition to the foregoing, Moffitt shall be the sole individual with check

16 writing and payment authority on any debtor in possession bank account.

17     15.    Given the rapidly evolving nature of this case and the immediate reporting

18 requirements facing the Debtor, the Debtor requires the immediate employment of Moffitt as

19 CRO and CTMC as financial advisors. CTMC was retained on January 8, 2010 and has already

20 spent days working with the Debtor to, among other things, understand the Debtor's business

21 model and operations and to assist the Debtor in the preparation of cash flow projections.

22 C.    The Financial Terms of the Debtor's Employment of CTMC.

23     16.    CTMC has never represented the Debtor in the past and has never been paid any

24 money by the Debtor. The Debtor and CTMC have agreed that CTMC will be paid on an hourly

25 basis in accordance with the following hourly rate scheduled:

26     Charles T. Moffitt - $410/hour

27     Andrew C. Harvey - $375/hour

28

1    David Adams - $350/hour

2    Other Associates - $150-375/hour

3    17.    CTMC expects that Moffitt, Andrew C. Harvey and David Adams will be the key
4    professionals at CTMC working with the Debtor. Given the extensive time that will be required
5    at the outset of this case, CTMC requires the payment of a $25,000 retainer (the "Retainer") in
6    order to proceed. In addition, commencing February 1, 2010 and on the first day of each
7    calendar month, CTMC requires the payment of monthly post-petition retainers in the sum of
8    $50,000 per month (the "Post-Petition Retainers"). To assist CTMC with its own cash flow
9    needs, CTMC requests Court authority to draw down against the Retainer and the Post-Petition
10   Retainers on a monthly basis for all fees and expenses incurred during the Debtor's Chapter 11
11   case.

12   18.    In addition to its hourly billed fees, CTMC will seek reimbursement of its
13   expenses from the Debtor in accordance with the rates set forth in the guidelines promulgated by
14   the Office of the United States Trustee.

15   19.    The Debtor and CTMC reserve the right to seek, pursuant to Court order, to alter
16   the financial terms of the Debtor's employment of CTMC in the future (pursuant to the mutual
17   consent of the Debtor and CTMC) in the event that CTMC's and/or Moffitt's role in this case
18   changes or expands, including in regards to any plan of reorganization, funding or financing, or
19   sale of the company.

20   20.    CTMC has not received any lien or other interest in property of the Debtor or of a
21   third party to secure payment of CTMC's fees or expenses.

22   21.    CTMC will seek Court authority to be paid from the Debtor's estate for any and
23   all fees and expenses incurred by CTMC. CTMC recognizes that the payment of any fees and
24   expenses will be subject to further Court order after notice and a hearing.

25   22.    CTMC has not shared or agreed to share its compensation for representing the
26   Debtor with any other person or entity, except among its members.

27

28

23.     CTMC will be maintaining time sheets and billing records in connection with its representation of the Debtor, and CTMC will provide monthly billing statements to the Debtor that will set forth the amount of fees and expenses incurred by CTMC during the previous month.

24.     CTMC understands the provisions of 11 U.S.C. Sections 327, 330 and 331 which require, among other things, Court approval of the Debtor's employment of CTMC as its financial advisor (and the Debtor's employment of Moffitt as CRO) and of all fees and reimbursement of expenses that CTMC will receive from the Debtor and the Debtor's estate.

25.     CTMC is not a creditor, an equity security holder or an insider of the Debtor.

26.     Other than as set forth herein and in the Moffitt Declaration annexed hereto, CTMC does not have any connection with any insider of the Debtor or any insider of an insider of the Debtor.  CTMC met with the Debtor on one occasion in September 2009 to discuss the Debtor's possible engagement of CTMC as its financial advisors and turnaround consultant. However, as noted above, at Center's instruction, the Debtor ultimately ended up engaging Focus as its financial advisors pre-petition.  There were no subsequent interactions between the Debtor and CTMC following the meeting in September 2009 until the Debtor reached out to CTMC on the Petition Date.

27.     CTMC is not and was not an investment banker for any outstanding security of the Debtor.  CTMC has not been within three years before the Petition Date an investment banker for a security of the Debtor, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtor.

28.     Neither CTMC nor any member of CTMC is, nor was, within two years before the Petition Date, a director, officer or employee of the Debtor or of any investment banker for any security of the Debtor.

29.     As set forth in the annexed Moffitt Declaration, to the best of CTMC's knowledge, CTMC does not hold or represent any interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or

indirect relationship to, connection with, or interest in, the Debtor or an investment banker for any security of the Debtor, or for any other reason.

30.    As set forth in the annexed Moffitt Declaration, to the best of CTMC's knowledge, CTMC does not hold or represent any interest materially adverse to the Debtor or the Debtor's estate, and CTMC is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code. Also, to the best of CTMC's knowledge, other than as set forth in the annexed Moffitt Declaration, CTMC has no prior connection with the Debtor, any creditors of the Debtor or its estate, or any other party in interest in this case, or its respective attorneys or accountants, the United States Trustee or any person employed by the United States Trustee.

31.    The Debtor believes that its employment of CTMC upon the terms and conditions set forth above is in the best interest of the Debtor's estate. The Debtor's employment of CTMC will be effective as of January 8, 2010, the date the Debtor retained CTMC.

32.    A true and correct copy of the Notice of this Application, which was filed and served in accordance with Local Bankruptcy Rule 2014-1(b)(2), is attached as Exhibit "B" to the annexed Moffitt Declaration.

WHEREFORE, the Debtor respectfully requests that the Court approve the Debtor's employment of CTMC as its financial advisor and Moffitt as its CRO upon the terms and conditions set forth above.

Dated: January 11, 2010                    CENTRAL METAL, INC., a California corporation


Jong Uk Byun
President and Chief Executive Officer

8

1   Submitted By:

2   LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.

3

4   By:_____

    MONICA Y. KIM
5   JULIET Y. OH
    LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
6   Proposed Attorneys for Chapter 11
    Debtor and Debtor in Possession
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF CHARLES T. MOFFITT

I, Charles T. Moffitt, hereby declare as follows:

1.      I have personal knowledge of the facts set forth below and, if called to testify, I would and could competently testify thereto.

2.      I am the Managing Partner of C.T. Moffitt & Company ("CTMC"). CTMC has been requested by Central Metal, Inc., a California corporation (the "Debtor"), debtor and debtor in possession herein, to act as its financial advisors. I personally have been requested by the Debtor to act as its Chief Restructuring Officer ("CRO").

3.      CTMC is a management consulting and interim management firm that I founded in 1985. CTMC has extensive experience assisting companies in transition, ranging from startups to well established enterprises in need of fresh perspective, to companies on the brink of and/or in bankruptcy. Using the broad experience of its principals and allied consultants, CTMC provides services in the areas of corporate performance improvement, turnaround management, financial restructuring and interim management. CTMC has served a variety of industries including, among others, specialty retail, steel manufacturing and fabrication, computer hardware and software, consumer electronics, telecommunications, entertainment and real estate. CTMC has been engaged as financial advisors, turnaround/restructuring consultants and interim management in numerous chapter 11 bankruptcy cases.

4.      It's my understanding and belief that, given the rapidly evolving nature of the Debtor's case and the immediate reporting requirements facing the Debtor, the Debtor wishes to immediately employ CTMC as its financial advisors and me as its CRO. CTMC was retained on January 8, 2010, the date of the Debtors' bankruptcy filing (the "Petition Date"), and has already spent days working with the Debtor to, among other things, understand the Debtor's business model and operations and to assist the Debtor in the preparation of cash flow projections.

5.      The Debtor and CTMC have entered into a retainer agreement, effective as of the Petition Date, pursuant to which CTMC has agreed to serve as financial advisors to the Debtor

1  and I have agreed to serve as the Debtor's CRO. A true and correct copy of the foregoing

2  retainer agreement is attached hereto as Exhibit "A."

3      6.      As part of its engagement, and effective as of January 8, 2010, CTMC will serve

4  as the Debtor's financial advisors and I will serve as the Debtor's CRO. CTMC's duties and my

5  duties shall include:

6          ▪    promptly undertaking an independent analysis and review of the Debtor's

7               business and operations, including the Debtor's cash management and financial

8               and accounting controls of the business;

9          ▪    ensuring the proper reporting and depositing into the debtor in possession bank

10              accounts of all collections and payments including any cash collections or

11              payments;

12         ▪    overseeing and reviewing the preparation of all financial data and reports

13              including the Debtor's cash flow projections; and

14         ▪    providing all other financial advisory, turnaround and restructuring services as

15              needed by the Debtor.

16     7.      In addition to the foregoing, I shall be the sole individual with check writing and

17  payment authority on any debtor in possession bank account of the Debtor.

18     8.      CTMC has never represented the Debtor in the past and has never been paid any

19  money by the Debtor. The Debtor and CTMC have agreed that CTMC will be paid on an hourly

20  basis in accordance with the following hourly rate scheduled:

21          Charles T. Moffitt - $410/hour

22          Andrew C. Harvey - $375/hour

23          David Adams - $350/hour

24          Other Associates - $150-375/hour

25     9.      I expect Andrew C. Harvey, David Adams and I will be the key professionals at

26  CTMC working with the Debtor. Given the extensive time that will be required at the outset of

27  this case, CTMC requires the payment of a $25,000 retainer (the "Retainer") in order to proceed

28

11

1   In addition, commencing February 1, 2010 and on the first day of each calendar month, CTMC

2   requires the payment of monthly post-petition retainers in the sum of $50,000 per month (the

3   "Post-Petition Retainers"). To assist CTMC with its own cash flow needs, CTMC requests Court

4   authority to draw down against the Retainer and the Post-Petition Retainers on a monthly basis

5   for all fees and expenses incurred during the Debtor's Chapter 11 case.

6       10.    In addition to its hourly billed fees, CTMC will seek reimbursement of its

7   expenses from the Debtor in accordance with the rates set forth in the guidelines promulgated by

8   the Office of the United States Trustee.

9       11.    CTMC reserves the right to seek, pursuant to Court order, to alter the financial

10  terms of the Debtor's employment of CTMC in the future (pursuant to the mutual consent of the

11  Debtor and CTMC) in the event that CTMC's and/or my role in this case changes or expands,

12  including in regards to any plan of reorganization, funding or financing, or sale of the company

13      12.    CTMC has not received any lien or other interest in property of the Debtor or of a

14  third party to secure payment of CTMC's fees or expenses.

15      13.    CTMC will seek Court authority to be paid from the Debtor's estate for any and

16  all fees and expenses incurred by CTMC. CTMC recognizes that the payment of any fees and

17  expenses will be subject to further Court order after notice and a hearing.

18      14.    CTMC has not shared or agreed to share its compensation for representing the

19  Debtor with any other person or entity, except among its members.

20      15.    CTMC will be maintaining time sheets and billing records in connection with its

21  representation of the Debtor, and CTMC will provide monthly billing statements to the Debtor

22  that will set forth the amount of fees and expenses incurred by CTMC during the previous

23  month.

24      16.    CTMC understands the provisions of 11 U.S.C. Sections 327, 330 and 331 which

25  require, among other things, Court approval of the Debtor's employment of CTMC as its

26  financial advisor (and the my employment as CRO) and of all fees and reimbursement of

27  expenses that CTMC will receive from the Debtor and the Debtor's estate.

28

1    17.    CTMC is not a creditor, an equity security holder or an insider of the Debtor.

2    18.    To the best of my knowledge, other than as set forth herein, CTMC does not have
3  any connection with any insider of the Debtor or any insider of an insider of the Debtor. CTMC
4  met with the Debtor on one occasion in September 2009 to discuss the Debtor's possible
5  engagement of CTMC as its financial advisors and turnaround consultant.    There were no
6  subsequent interactions between the Debtor and CTMC following the meeting in September
7  2009 until the Debtor reached out to CTMC on the Petition Date.

8    19.    CTMC is not and was not an investment banker for any outstanding security of
9  the Debtor.    CTMC has not been within three years before the Petition Date an investment
10  banker for a security of the Debtor, or an attorney for such an investment banker in connection
11  with the offer, sale or issuance of any security of the Debtor.

12    20.    To the best of my knowledge, neither CTMC nor any member of CTMC is, nor
13  was, within two years before the Petition Date, a director, officer or employee of the Debtor or of
14  any investment banker for any security of the Debtor.

15    21.    To the best of my knowledge, CTMC does not hold or represent any interest
16  materially adverse to the interest of the estate or of any class of creditors or equity security
17  holders, by reason of any direct or indirect relationship to, connection with, or interest in, the
18  Debtor or an investment banker for any security of the Debtor, or for any other reason.

19    22.    To the best of my knowledge, CTMC does not hold or represent any interest
20  materially adverse to the Debtor or the Debtor's estate, and CTMC is a "disinterested person" as
21  that term is defined in Section 101(14) of the Bankruptcy Code.    Also, to the best of my
22  knowledge, other than as set forth herein, CTMC has no prior connection with the Debtor, any
23  creditors of the Debtor or its estate, or any other party in interest in this case, or its respective
24  attorneys or accountants, the United States Trustee or any person employed by the United States
25  Trustee.

26

27

28

13

23.     A true and correct copy of the Notice of the application to which this declaration is attached, which I am informed by proposed counsel for the Debtor was filed and served in accordance with Local Bankruptcy Rule 2014-1(b)(2), is attached as Exhibit "B" hereto.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 11th day of January 2010, at _Los Angeles_____, California.

Charles T. Moffitt, Declarant

# EXHIBIT A

# CONSULTING AGREEMENT

THIS IS A CONSULTING AGREEMENT (the "Agreement") entered into on January 8, 2010, between Central Metal, Inc., a California corporation,  ("Central"), and C.T. Moffitt & Company ("Moffitt Company" or "Moffitt"), with reference to the following facts:

A.      Central Metal a fully integrated scrap processor and recycling company that processes ferrous and non-ferrous material.

B.      Central desires to engage Moffitt Company to provide certain financial and management advisory services in connection with Central's Chapter 11 bankruptcy, which are described as the "Services" below.  Moffitt Company is willing to provide these services on the terms and conditions set forth in this Agreement.

NOW THEREFORE, for and in consideration of the mutual covenants and agreements set forth herein, the adequacy of which is hereby acknowledged, the parties hereto agree as follows:

1.  **Engagement**

(a)      Effective Date. This Agreement shall take effect on the date upon which a retainer of $50,000 is paid in advance to Moffitt in good funds in connection with Moffitt Company's engagement by Paramount ("Retainer"), or at such time Moffitt begins work by mutual agreement of the parties.

(b)      Compensation and Billing. Central agrees to pay the fees and expenses incurred by Moffitt Company at the following hourly rates:  $410 for Charles T. Moffitt, and at lesser rates for other Moffitt professionals.  Moffitt shall draw down on the Retainer all of its incurred fees and expenses until the Retainer is fully exhausted. Upon the complete depletion of the Retainer, the Agreement shall terminate automatically unless an additional retainer is paid to the satisfaction of Moffitt Company, or Moffitt elects to continue the assignment without a retainer. If the assignment continues, billing shall be on a weekly basis and payable upon presentation.

(c) In the event Central offers employment to any person employed by Moffitt, and such offer is accepted, Moffitt shall be paid a fee payable at the time the employment commences in an amount equal to thirty percent (30%) of the gross annual salary (or, if the employment is on an hourly basis, the gross annual salary assuming a 40 hour week).

(c)      Services. From the Effective Date and through the date this Agreement is terminated, Moffitt shall provide certain financial and other services to Central as follows (collectively, the "Services".

1. Assist the company in preparing and maintaining cashflow projections acceptable to the Court and useful in the management of the business.
2. Assist the debtor in the management of its cash in a manner acceptable to the Court.
3. Assist the debtor in preparing reports acceptable to the Court and the U.S. Trustee.
4. Review overhead and operations for potential improvements and savings.
5. Guide management of the company in the improvement of operations.
6. Perform the functions of  "Chief Restructuring Officer" as designated by the Court and/or agreed upon by the company and its creditors.
7. Handle and coordinate any other financial and administrative tasks mutually agreed upon by Central and Moffitt.

Page Two

(d)     Excluded Services. Notwithstanding anything to the contrary in Section 1(c) above, Moffitt Company does not agree herein to provide the following services, and nothing in this Agreement shall be construed as an agreement or understanding of Moffitt Company to provide the following services (collectively, the "Excluded Services"):

> (i) Any efforts or activity relating to additional loans, financing, or capital needed by Central.

> (ii) Any efforts or activity relating to marketing or sale of any assets of Paramount and valuation of such assets for purposes of a sale, other than in the ordinary course of business.

Any desire by Central for Moffitt Company to render any of the Excluded Services shall be set forth in a separate agreement to be entered into by the parties.

(e)     Independent Contractor; Non-Exclusive Engagement. During the term of this Agreement, Central understands and acknowledges that Moffitt Company is being hired by Central as an independent contractor, and that Moffitt Company's engagement by Central is not exclusive and subject to the requirements of the United States Bankruptcy Court.

2.     **Term.** The term of this Agreement shall commence on the Effective Date and continue until terminated as provided in Paragraph 3 hereof.

3.     **Termination.** This Agreement shall terminate as follows:

(a)     Upon the mutual agreement of the parties;

(b)     By Moffitt Company upon the depletion of the Retainer unless an additional retainer is paid to the satisfaction of Moffitt Company, or Moffitt agrees to an alternative arrangement.

(c)     Upon death of Charles T. Moffitt, or disability of Charles T. Moffitt which, in the judgment of Charles T. Moffitt, makes it difficult for him to perform the Services.

No party shall be permitted to terminate this Agreement on terms other than those set forth above in Sections 4(a), (b), and (c) above.

4.     **Indemnification.** Other than grossly negligent or malicious acts or omissions of Moffitt Company, Central hereby agrees to indemnify and to hold Moffitt Company, and its shareholders, officers, employees, representatives, consultants, and agents (individually an "Indemnified Party" and collectively, the "Indemnified Parties") harmless from and against and in respect of any losses suffered, sustained, incurred or paid by any Indemnified Party in connection with, resulting from or arising out of, directly or indirectly, the Services.

Page Three

5. **Waiver of Breach**. The waiver by either party to this Agreement of a breach of any provision of this Agreement by the other party shall not operate or be construed as a waiver of any subsequent breach by the other party.

6. **Attorneys' Fees**. In the event that either party to this Agreement commences any legal action or proceeding, including but not limited to arbitration, to interpret or enforce the terms of this Agreement, the prevailing party in such a proceeding shall be entitled to recover its reasonable attorney's fees and costs in addition to any other relief. The parties agree to mediate any claim or dispute arising between them out of this Agreement before resorting to arbitration. Mediation fees shall be shared equally by both parties. Any claim or dispute arising out of this Agreement which cannot be successfully mediated shall be decided by binding arbitration in the County of Los Angeles, California, per the Commercial Arbitration Rules of the American Arbitration Association.

7. **Construction.** The parties hereto agree that this Agreement shall be interpreted, enforced and governed by the laws of the State of California. The place of performance of this Agreement is Los Angeles County. All of the parties hereto waive, to the fullest extent each may effectively do so, any defense or objection based upon forum non conveniens and any defense or objection to venue of any action instituted within Los Angeles County, California.

8. **Execution.** This Agreement shall be effective when each party and signatory has executed it. This Agreement may be executed in several counterparts, each of which shall be deemed an original and all of which taken together shall constitute a single instrument.

9. **Notices**. All notices required to be given by any party hereto may be given by personal delivery, by delivery by a reputable overnight service, or by mailing same, first-class postage prepaid, deposited in the United States mails, certified or registered, return receipt requested, addressed to the address set forth below. Notice shall be deemed effective upon personal delivery, the next business day after depositing with a reputable overnight service or two (2) business days after deposit into the mails as set forth above. The parties hereto may change addresses for notice by written notice to the other.

| | |
|---|---|
| To Paramount: | Central Metal, Inc..<br>8201 Santa Fe Avenue<br>Huntington Park, CA 90255<br>Attention:  Mr. Jong Uk Byun |
| To Moffitt Company : | C.T. Moffitt & Company<br>137 S. Bedford Dr.<br>Beverly Hills, CA 90212<br>Attention:  Charles T. Moffitt |

10. **Entire Agreement**. This Agreement contains the entire agreement and understanding concerning the subject matter between the parties and supersedes and replaces all prior negotiations, proposed agreement and agreements, written or oral. Each party hereto acknowledges that no other party, nor agent or attorney of any other party, has made any promise, representation or warranty whatsoever, expressed or implied, not contained herein concerning the subject matter hereof, to induce them to execute

Page Four

this Agreement, and acknowledges that they have not executed this Agreement in reliance upon any such promise, representation or warranty not contained herein.

11.    **Severability**. If any part of this Agreement is, for any reason, declared invalid, the remaining part or parts shall remain in full force and effect.

12.    **Gender**. Whenever in this document the context may so require, the masculine gender shall be deemed to refer to and include the feminine and neuter, and the singular to refer to and include the plural, and vice versa.

13.    **Invalid Until Executed**. No legal rights will accrue to either party unless and until this Agreement shall have been fully executed.

14.    **Agreement Negotiated**. The parties hereto have been represented by counsel of their own choosing who have carefully negotiated and reviewed the provisions hereof. As a consequence, the parties do not believe that the presumptions of Civil Code Section 1654 relating to the interpretation of contracts against the drafter or any particular clause should be applied in this case and therefore waive its effects.

15.    **Counterparts**. This Agreement may be executed in several counterparts, each of which shall be deemed an original and all of which taken together shall constitute a single instrument.

16.    **Assignment**. Neither party shall have the right to assign this Agreement.

THIS AGREEMENT has been executed on the date first set forth above.

BY PARAMOUNT:                    CENTRAL METAL, INC.

                                 By:
                                    Jong Uk Byun
                                    Its:  President & CEO


BY MOFFITT COMPANY:              C.T. MOFFITT & COMPANY

                                 By:
                                    Charles T. Moffitt
                                    Its:  President

# EXHIBIT B

MONICA Y. KIM (SBN 180139)
JULIET Y. OH (SBN 211414)
LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: myk@lnbrb.com, jyo@lnbrb.com

Proposed Attorneys for Chapter 11 Debtor
and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re | Case No. 2:10-bk-10642-VZ |
| CENTRAL METAL, INC., a California corporation, | Chapter 11 |
| Debtor. | **NOTICE OF APPLICATION OF DEBTOR AND DEBTOR IN POSSESSION TO EMPLOY C.T. MOFFITT & COMPANY AS FINANCIAL CONSULTANTS AND CHARLES T. MOFFITT AS CHIEF RESTRUCTURING OFFICER** |
| | [No Hearing Required – Local Bankruptcy Rule 2014-1(b)] |

**PLEASE TAKE NOTICE** that Central Metal, Inc., a California corporation, Chapter 11 debtor and debtor in possession herein (the "Debtor"), has filed an application (the "Application") to employ T. Moffitt & Company ("CTMC") as financial advisors and Charles T. Moffitt ("Moffitt") as Chief Restructuring Officer to the Debtor ("CRO"), effective as of January 8, 2010, the date of the filing of the Debtor's Chapter 11 bankruptcy case (the "Petition Date")

**PLEASE TAKE FURTHER NOTICE** that the Debtor seeks to employ CTMC and Moffitt to render, among others, the following types of professional services:

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- promptly undertaking an independent analysis and review of the Debtor's business and operations, including the Debtor's cash management and financial and accounting controls of the business;

- ensuring the proper reporting and depositing into the debtor in possession bank accounts of all collections and payments including any cash collections or payments;

- overseeing and reviewing the preparation of all financial data and reports including the Debtor's cash flow projections; and

- providing all other financial advisory, turnaround and restructuring services as needed by the Debtor.

**PLEASE TAKE FURTHER NOTICE** that, in addition to the foregoing services, Moffitt shall be the sole individual with check writing and payment authority on any debtor in possession bank account of the Debtor.

**PLEASE TAKE FURTHER NOTICE** that CTMC has never represented the Debtor in the past and has never been paid any money by the Debtor. The Debtor and CTMC have agreed that CTMC will be paid on an hourly basis in accordance with the standard hourly rates for CTMC's professionals. CTMC has not received any lien or other interest in property of the Debtor or of a third party to secure payment of CTMC's fees or expenses.

**PLEASE TAKE FURTHER NOTICE** that, given the extensive time that will be required at the outset of the Debtor's case, CTMC requires the payment of a $25,000 retainer (the "Retainer") in order to proceed. In addition, commencing February 1, 2010 and on the first day of each calendar month, CTMC requires the payment of monthly post-petition retainers in the sum of $50,000 per month (the "Post-Petition Retainers"). In addition to its hourly billed fees, CTMC will seek reimbursement of its expenses from the Debtor in accordance with the rates set forth in the guidelines promulgated by the Office of the United States Trustee. To assist CTMC with its own cash flow needs, CTMC requests Court authority to draw down against the Retainer and the Post-Petition Retainers on a monthly basis for all fees and expenses incurred

1  during the Debtor's Chapter 11 case. The Debtor and CTMC reserve the right to seek, pursuant

2  to Court order, to alter the financial terms of the Debtor's employment of CTMC in the future

3  (pursuant to the mutual consent of the Debtor and CTMC) in the event that CTMC's and/or

4  Moffitt's role in this case changes or expands, including in regards to any plan of reorganization.

5  funding or financing, or sale of the company.

6      **PLEASE TAKE FURTHER NOTICE** that CTMC will seek Court authority to be paid

7  from the Debtor's estate for any and all fees and expenses incurred by CTMC.   CTMC

8  recognizes that the payment of any fees and expenses will be subject to further Court order after

9  notice and a hearing.

10     The Application is based on this Notice, the Application, the Declaration of Charles T

11  Moffitt submitted in support of the Application, the entire record of the case, and any other

12  evidence properly presented to the Court in support of the Application.

13     **PLEASE TAKE FURTHER NOTICE** that any request for a copy of the Application

14  must be made in writing to Levene, Neale, Bender, Rankin & Brill L.L.P., 10250 Constellation

15  Blvd., Suite 1700, Los Angeles, California 90067, Attention: Juliet Y. Oh, Tel: (310) 229-1234,

16  Fax: (310) 229-1244, Email: JYO@LNBRB.com.

17     **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 2014-

18  1(b)(3)(E), any response and request for a hearing, in the form required by Local Bankruptcy

19  Rule 9013-1(f)(1), must be filed and served on the Debtors, LNBRB and the Office of the United

20  States Trustee no later than 15 days following the date of service of this Notice.

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

3

1     **PLEASE TAKE FURTHER NOTICE** that failure to file and serve an objection or

2   request for hearing within this fifteen (15) day period may be deemed by the Court to be consent

3   to the relief requested in the Application.

4   Dated: January 11, 2010                CENTRAL METAL, INC.

5

6                                       By: _____

7                                          MONICA Y. KIM
                                           JULIET Y. OH
8                                          LEVENE, NEALE, BENDER, RANKIN
                                              & BRILL L.L.P.
9                                          Proposed Attorneys for Chapter 11 Debtor
                                           and Debtor in Possession

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| In re:<br>CENTRAL METAL, INC. | Chapter 11<br>2:10-bk-10642-VZ |
|---|---|
| Debtor. | |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
10250 Constellation Boulevard, Suite 1700, Los Angeles, California 90067.

A true and correct copy of the foregoing document described as **APPLICATION OF DEBTOR AND DEBTOR IN POSSESSION TO EMPLOY C.T. MOFFITT & COMPANY AS FINANCIAL CONSULTANTS AND CHARLES T. MOFFITT AS CHIEF RESTRUCTURING OFFICER; DECLARATION OF CHARLES T. MOFFITT, ESQ. IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On January 12 2010 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Monica Y Kim    myk@lnbrb.com
- Dare Law    dare.law@usdoj.gov
- Juliet Y Oh    jyo@lnbrb.com, jyo@lnbrb.com
- Richard A Solomon    richard@sgsslaw.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On -------------------- I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on January 12, 2010 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

> *By attorney service:*
> *The Honorable Vincent P. Zurzolo*
> *255 East Temple Street*
> *Los Angeles, CA 90012*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| January 12, 2010 | Marguerite Hardin | *[signature]* |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                    **F 9013-3.1**