MONICA Y. KIM (SBN 180139)
JULIET Y. OH (SBN 211414)
LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: myk@lnbrb.com, jyo@lnbrb.com

Proposed Attorneys for Chapter 11 Debtor
and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>CENTRAL METAL, INC., a California corporation,<br><br>               Debtor. | Case No. 2:10-bk-10642-VZ<br><br>Chapter 11<br><br>**DEBTOR-IN-POSSESSION'S REPORT ON STATUS OF REORGANIZATION CASE; DECLARATIONS OF CHARLES T. MOFFITT AND JULIET Y. OH, ESQ. IN SUPPORT THEREOF**<br><br>DATE:     February 25, 2010<br>TIME:     9:30 a.m.<br>PLACE:   Courtroom 1368<br>             255 E. Temple Street<br>             Los Angeles, California |

     **TO THE HONORABLE VINCENT P. ZURZOLO; ALL SECURED CREDITORS AND THEIR COUNSEL OF RECORD (TO THE EXTENT KNOWN); THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND ITS COUNSEL OF RECORD; THE TWENTY LARGEST UNSECURED CREDITORS; THE OFFICE OF THE UNITED STATES TRUSTEE; AND ALL PARTIES REQUESTING SPECIAL NOTICE:**

1    Central Metal, Inc., a California corporation, Chapter 11 debtor and debtor in possession

2    herein (the "Debtor"), hereby submits its report on the status of the Debtor's reorganization case

3    (the "Status Report") pursuant to the Court's "Order: (1) Requiring Debtor-In-Possession To File

4    Report On Status Of Reorganization Case; (2) Setting Hearing On Status Of Reorganization

5    Case; And (3) Establishing Procedure For Requesting Approval Of Disclosure Statement And

6    Confirmation Of Plan" (the "Order").

7    **A.    Summary Of Significant Events Which Have Occurred Since The Debtor's**
       **Bankruptcy Filing.**

8

9    The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on

10   January 8, 2010 (the "Petition Date").  The Debtor continues to operate its business, manage its

11   financial affairs and operate its bankruptcy estate as a debtor in possession pursuant to Sections

12   1107 and 1108 of the Bankruptcy Code.

13   1.    Administrative Compliance.

14   The Debtor has complied with the requirements of the Office of the United States Trustee

15   ("OUST") by, among other things, filing its "7-Day Package" with the OUST on January 29,

16   2010 (within the extended time period agreed to by the OUST), closing the Debtor's pre-petition

17   bank accounts, and opening three (3) debtor-in-possession bank accounts with Wells Fargo

18   Bank, N.A. (the "DIP Accounts").

19   The Debtor filed its Schedules of Assets and Liabilities and Statement of Financial

20   Affairs on February 2, 2010, within the extended time period by which the Debtor was ordered

21   by the Court to do so.

22   On February 9, 2010, the Debtor attended the meeting of creditors conducted by the

23   OUST pursuant to 11 U.S.C. § 341(a).

24   2.    The Debtor's Retention Of A Financial Advisor.

25   At the outset of the Debtor's case, the Debtor immediately hired C.T. Moffitt &

26   Company ("CTMC") to serve as its financial advisors and for Charles T. Moffitt ("Moffitt"),

27   who is the principal of CTMC, to become the Chief Restructuring Officer ("CRO") of the

28

1   Debtor.   On January 12, 2010, the Debtor filed an employment application for CTMC and

2   Moffitt to reflect these roles.   Before the objection period passed, the OUST notified proposed

3   counsel for the Debtor that, as a policy matter and without any exception, the OUST will object

4   to an employment wherein the proposed financial advisors and the CRO are in effect the same

5   person due to potential conflicts of interest.   More specifically, the OUST expressed that, from

6   its perspective, financial advisors are employed as independent consultants to the bankruptcy

7   estate, and have fiduciary obligations to the estate and its creditors.   On the other hand, a CRO

8   becomes an employee and manager of the debtor, and, therefore, is not strictly independent.   As

9   a result, it is impossible for the same individual to "wear two hats" and "serve different masters."

10          Given that at least three members of CTMC (Moffitt, Andrew Harvey and David Adams)

11   had been and continue to be at the Debtor's business locations on a daily basis to stabilize the

12   operations and control all of the cash running through the business, the Debtor made the sound

13   business judgment of keeping CTMC as financial advisors, and withdrawing its request to

14   employ Moffitt as CRO.   With this change, the OUST agreed not to object to the employment of

15   CTMC, and a supplement to the employment application will be filed with the Court shortly

16   identifying this change.

17          In reality, while Moffitt is no longer requested to take on the title of CRO, as the

18   employment application indicated, the CRO and CTMC (as financial advisors) were to work

19   collaboratively to render essentially the same types of services to the Debtor, which CTMC and

20   Moffitt (as the principal of CTMC) have done and continue to do so on a daily basis.   A key

21   aspect of the services to be rendered was to control all of the currency that is obtained by the

22   Debtor and spent by the Debtor on a daily basis.   This key aspect continues to be within the

23   exclusive control of CTMC, with Moffitt being the sole signatory to all DIP Accounts.

24          In the approximately four weeks since the Petition Date, CTMC has spent every business

25   day ensconced at the Debtor's main corporate office and other facilities, familiarizing itself with

26   the Debtor's business operations, facilities, personnel, and books and records, reviewing and

27   assessing the Debtor's accounting and cash management practices and procedures, and

28

investigating the allegations that have been made by Center.  In summary, CTMC's review and

assessment of the Debtor's business operations and accounting/cash management practices

confirm that, while the Debtor's accounting and cash management systems may be rudimentary

for a business of its size and complexity and require improvement, such systems do, in fact,

already exist, are routinely followed, and are traceable and auditable.   With a sound

understanding of the Debtor's operations as well as its weaknesses, CTMC has also now

developed and implemented for the Debtor, and educated the Debtor to use, certain accounting

software and methods to track its transactions in a more efficient manner.   CTMC is also

assisting the Debtor with regard to pricing and other discrete operational matters.  In addition to

these high-priority, forward looking tasks, CTMC is also having forensic personnel review data

related to the Debtor's pre-petition transactions.

       3.     <u>Appointment Of A Committee</u>.

On January 22, 2010, the OUST provided notice of its appointment of an Official

Committee of Unsecured Creditors (the "<u>Committee</u>") in the Debtor's case.  The Debtor has

communicated with the Committee with respect to a variety of issues relating to this case.  The

Debtor hopes to work collaboratively with the Committee (as well as other creditors) to

formulate an appropriate exit strategy which benefits all creditors and parties in interest in the

Debtor's case.

       4.     <u>The Bank's Motion To Appoint An Examiner</u>.

On January 22, 2010, the Debtor's primary secured lender, Center Bank ("the "<u>Bank</u>" or

"<u>Center</u>") filed a motion for the appointment of an examiner (the "<u>Examiner Motion</u>"), which is

currently set for hearing on February 23, 2010 at 11:00 a.m.  Joinders to the Examiner Motion

have been filed by three equipment lessors/lenders.   The Debtor vigorously disputes the

allegations made by the Bank in the Examiner Motion.  Given the serious nature of the Bank's

allegations, CTMC has expended a substantial amount of time investigating such allegations.

The Debtor filed its opposition to the Examiner Motion on February 9, 2010.  The Committee

has also filed an opposition to the Examiner Motion.   Numerous depositions have been

1    scheduled by the Bank and the Debtor in connection with the Examiner Motion.

2        5.    <u>Cash Collateral Issues</u>.

3        On January 12, 2010, the Debtor filed an emergency motion seeking use of cash

4    collateral on an interim basis pending a final hearing (the "<u>Cash Collateral Motion</u>").

5    Immediately prior to the emergency hearing on the Cash Collateral Motion on January 14, 2010

6    at 11 a.m., the Debtor and the Bank reached a stipulation providing for the Debtor's interim use

7    of cash collateral through February 18, 2010 (the "<u>Cash Collateral Stipulation</u>"), substantially in

8    accordance with an operating budget submitted by the Debtor (the "<u>First Budget</u>").  The Cash

9    Collateral Stipulation was approved by the Court, subject to certain modifications set forth on the

10    record of the hearing on the Cash Collateral Motion.  As it relates to creditors other than the

11    Bank who assert liens in the Debtor's cash collateral, the Cash Collateral Motion was granted

12    and the Debtor was given authority to use cash collateral in accordance with the terms and

13    conditions set forth in the Cash Collateral Motion.

14        On January 29, 2010, the Debtor filed a supplement to the Cash Collateral Motion (the

15    "<u>Cash Collateral Supplement</u>"), seeking authority to use cash collateral in accordance with an

16    operating budget submitted by the Debtor which encompasses the period from the week ending

17    January 30, 2010 through the week ending March 20, 2010 (the "<u>Second Budget</u>").  As noted in

18    the Cash Collateral Supplement, the Debtor has been, and continues to be, operating in

19    accordance with the First Budget.  In addition, the Debtor and CTMC have worked diligently to

20    implement financial controls and make improvements to the Debtor's cash management and

21    accounting systems.  The Bank filed an opposition to the Debtor's Cash Collateral Supplement

22    on February 9, 2010, and the Debtor filed its reply to the Bank's opposition on February 11,

23    2010.  A hearing on the Debtor's continued use of cash collateral is currently scheduled for

24    February 16, 2010 at 1:30 p.m.

25    / / /

26    / / /

27    / / /

28

**B.    The Debtor's Post-petition Operations And Litigation Involving The Debtor**

    1.    <u>Post-Petition Operations</u>.

The Debtor is a fully integrated scrap metal processing company that purchases, processes and sells ferrous and non-ferrous metals domestically and internationally. The Debtor is one of the largest processing companies on the West Coast, has one of the largest land sites and processing capacities, and is fully diversified in its business portfolio that entails dynamic trading relationships with renowned metal manufacturers around the world. The Debtor currently operates out of five (5) active facilities throughout Southern California – two facilities in the Los Angeles County area, one facility in Barstow/Hinkley, one facility in San Bernardino, and one facility in Bakersfield.

Attached as Exhibit "1" to the Declaration of Charles T. Moffitt (the "<u>Moffitt Declaration</u>") annexed hereto is a cash flow summary of the Debtor's performance during the first four weeks covered by the First Budget which provides both the projected and actual performance for these periods, as well as the resulting variance. As the cash flow summary indicates, the Debtor has been mostly on track, or exceeding, its projected weekly beginning cash position. This summary also shows that the Debtor is continuing to purchase sufficient amounts of scrap metal to replenish sold inventory, thereby maintaining adequate inventory levels to protect the Bank from any decline in the value of the inventory that results from the Debtor's use of cash collateral.[1]

    2.    <u>Litigation Involving the Debtor</u>.

As reflected in the Debtor's Statement of Financial Affairs, pre-petition, the Debtor was a party to litigation commenced by two of its equipment lessors/lenders, Center Capital Corporation ("<u>Center Capital</u>") and Banc of America Leasing & Capital, LLC ("<u>Banc of America</u>"). Both matters have been stayed by operation of the automatic stay pursuant to 11 U.S.C. § 362.

---

[1] In addition, there is no evidence to suggest that the value of the Bank's other collateral, namely, real estate and equipment, all of which remains with the estate, has diminished since the Petition Date.

As noted above, the Debtor is currently engaged in discovery with the Bank in connection with the Examiner Motion and the Debtor's request for continued use of cash collateral. In addition, it has become increasingly clear to the Debtor that there will be litigation by and among the Debtor, the Bank and Focus Management Group ("Focus"), the turnaround consulting firm hired pre-petition by the Debtor at the instruction of the Bank. Indeed, the Debtor has engaged special litigation counsel to pursue its claims against the Bank and Focus, and the claims are likely to encompass a variety of lender liability and breach of fiduciary duty issues, among others.

Prior to the Petition Date, the Debtor entered into a variety of equipment leases which are not true leases at all, but, rather, disguised sales. There appears to be five equipment lenders involved in this case, including Center Capital and Banc of America, and preliminarily, three of these five lenders have acknowledged that the transactions were disguised sales. The Debtor is cooperating with these lenders' efforts to inspect and appraise their respective equipment in order to reach a compromise as to the secured claims that these lenders must be provided for under the Debtor's reorganization plan. With regard to those lenders that have not acknowledged the legal nature of the transactions as being disguised sales, the Debtor will shortly commence adversary proceedings to seek a judicial determination as such.

**C.     Status Of The Debtor's Reorganization Efforts, Explanation As To Why Disclosure Statement Not Yet Filed And Estimate As To Timeframe For Filing Of Disclosure Statement.**

The Debtor is currently focused on stabilizing its business operations and improving its cash management and accounting systems. In addition, the Debtor is in the process of negotiating with its equipment lenders in order to reach a consensual resolution regarding the treatment of their respective claims in this case (and potentially, under a plan of reorganization). To the extent the Debtor is not able to reach a consensual resolution with one or more of its equipment lenders (regarding the characterization of the underlying agreements and/or the treatment of their claims) the Debtor will commence adversary proceedings to obtain judicial

determinations of such matters.  The Debtor believes that the resolution of the Debtor's disputes with the equipment lenders will pave the way for the formulation of a feasible plan of reorganization.  Since an expeditious resolution of the Debtor's disputes with the Bank is not, at this point, realistic, the Debtor is also exploring, among other things, the possibility of obtaining financing to take Center out or fund a plan of reorganization which provides for the reinstatement and cure of the Debtor's loans with Center.  In addition, the Debtor is exploring the possibility of selling some or substantially all of its assets and locating a financial partner.

While the Debtor is committed to exiting from bankruptcy as quickly and cost-effectively as possible, the Debtor requires additional time to address the issues discussed above, develop and pursue its reorganization options and strategies, and file a plan of reorganization and disclosure statement.  However, since the filing of the Debtor's bankruptcy case, approximately four weeks ago, the Debtor has been plagued by serious and damaging allegations made by the Bank and Focus and has been forced to expend a significant amount of time investigating and defending itself from such allegations.  This, in turn, has taken time away from the Debtor's reorganization efforts.

The Debtor's exclusive period to file a plan of reorganization under 11 U.S.C. § 1121 does not expire until May 8, 2010.  The Debtor anticipates that it will be able to file a plan of reorganization on or before May 8, 2010, barring any circumstances which would warrant an extension of its plan exclusivity periods.

**D.    Proposed Deadlines For Filing Claims And Any Objections Thereto.**

The Debtor requests that a claims bar date be established so that the Debtor can determine the universe of claims being asserted against the Debtor.  Such information will aid the Debtor in the formulation of its exit strategy.  Accordingly, the Debtor believes that a claims bar date should be established prior to the expiration of the Debtor's exclusive period to file a plan of reorganization.  The Debtor respectfully requests that the Court establish in this case a claims bar date of April 16, 2010.  If the Court approves that bar date, on or before March 2, 2010, the Debtor will mail notice of that bar date to all known creditors and interest holders, in

1    accordance with Local Bankruptcy Rule 3001-1.

2    The Debtor anticipates that its plan of reorganization will provide for a deadline by which

3    objections to claims must be filed and, therefore, requests that the Court not establish a deadline

4    for filing objections to claims at this time.  However, if the Court requires that such a deadline be

5    set now, the Debtor respectfully requests that the deadline be set at least 120 days after the

6    claims bar date.

7    **E.    The Debtor Has Performed All Of Its Duties Under 11 U.S.C. §§ 521, 1106 and 1107.**

8    Since the Petition Date, the Debtor has fulfilled its administrative duties as a debtor in

9    possession by, among other things, filing the Debtor's Schedules of Assets and Liabilities,

10   Statement of Financial Affairs and related documents, filing with the OUST the Debtor's "7-Day

11   Package," and attending the Initial Debtor Interview and Section 341(a) meeting of creditors

12   conducted by the OUST.  The Debtor is continuing to operate its business and use cash collateral

13   in accordance with a Court-approved operating budget.  The Debtor believes that it is in full

14   compliance with all of its obligations and duties under 11 U.S.C. §§ 521, 1106 and 1107.

15   **F.    Employment Of Professionals.**

16   The Debtor filed its application to employ Levene, Neale, Bender, Rankin & Brill L.L.P.

17   ("LNBRB") as its general bankruptcy counsel (the "LNBRB Application") on January 11, 2010.

18   No objection to, or request for hearing on, the LNBRB Application has been filed.  LNBRB has

19   filed with the Court a declaration regarding non-opposition to the LNBRB Application and

20   lodged with the Court a proposed order approving the LNBRB Application, in accordance with

21   Local Bankruptcy Rules 2014-1(b)(4) and 9013-1(o)(3).    Attached as Exhibit "A" to the

22   Declaration of Juliet Y. Oh annexed hereto is a "Professional Compensation and Fee Budget" for

23   LNBRB.

24   On January 12, 2010, the Debtor filed its application to employ CTMC as financial

25   advisors for the Debtor (the "CTMC Application").  No opposition or request for hearing has

26   been filed with respect to the CTMC Application.  However, as noted above, the OUST

27   expressed an objection to the Debtor's employment of Moffitt as CRO for the Debtor at the same

28

1    time that Moffitt's company, CTMC, is employed as the Debtor's financial advisors.  As also

2    noted above, in response to the OUST's objection, the Debtor and CTMC have agreed to modify

3    the CTMC Application to withdraw the request to employ Moffitt as CRO.  The Debtor will file

4    a supplement and modification to the CTMC Application which reflects such agreement shortly.

5    Attached as Exhibit "2" to the Moffitt Declaration annexed hereto is a "Professional

6    Compensation and Fee Budget" for CTMC.

7    Dated:  February 11, 2010            CENTRAL METAL, INC.

8

9                                                       By:_____/s/ Juliet Y. Oh_____
                                                              Monica Y. Kim
10                                                           Juliet Y. Oh
                                                              Levene, Neale, Bender, Rankin & Brill L.L.P.
11                                                           Proposed Attorneys for Debtor and Debtor in
                                                              Possession
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# DECLARATION OF CHARLES T. MOFFITT

I, Charles T. Moffitt, hereby declare as follows:

1.      I have personal knowledge of the facts set forth below and, if called to testify, I would and could competently testify thereto.

2.      I am the Managing Partner of C.T. Moffitt & Company ("CTMC"), proposed financial advisors to Central Metal, Inc., a California corporation (the "Debtor"), debtor and debtor in possession herein.  CTMC was retained on January 8, 2010, the date of the Debtors' bankruptcy filing (the "Petition Date"), and has spent the days following the Petition Date working with the Debtor to, among other things, understand the Debtor's business model and operations and to assist the Debtor in the preparation of cash flow projections.  CTMC and I have investigated the business operations and financial affairs of the Debtor since the commencement of the Debtor's bankruptcy case.  I have access to the Debtor's books and records and, to the extent necessary to complete this declaration, I have reviewed such books and records.

3.      CTMC is a management consulting and interim management firm that I founded in 1985.  CTMC has extensive experience assisting companies in transition, ranging from startups to well established enterprises in need of fresh perspective, to companies on the brink of and/or in bankruptcy.  Using the broad experience of its principals and allied consultants, CTMC provides services in the areas of corporate performance improvement, turnaround management, financial restructuring and interim management.  CTMC has served a variety of industries including, among others, specialty retail, steel manufacturing and fabrication, computer hardware and software, consumer electronics, telecommunications, entertainment and real estate.  CTMC has been engaged as financial advisors, turnaround/restructuring consultants and interim management in numerous chapter 11 bankruptcy cases.

4.      I make this declaration in support of the "Debtor's Report On Status Of Reorganization Case" to which this declaration is attached (the "Status Report").

5.      To the best of my knowledge, the Debtor has complied with the requirements of the Office of the United States Trustee ("OUST") by, among other things, closing the Debtor's

1    pre-petition bank accounts, and opening three (3) debtor-in-possession bank accounts with Wells

2    Fargo Bank, N.A. (the "DIP Accounts").

3        6.    At the outset of the Debtor's case, the Debtor hired CTMC to serve as the

4    Debtor's financial advisors and me to serve as Chief Restructuring Officer ("CRO") of the

5    Debtor.   It is my understanding and belief that the OUST expressed an objection to my

6    employment as CRO of the Debtor at the same time that my company, CTMC, is acting as

7    financial advisors to the Debtor.

8        7.    Since at least three members of CTMC (Andrew Harvey, David Adams, and I)

9    have been and continue to be at the Debtor's business locations on a daily basis to stabilize the

10   operations and control all of the cash running through the business, I support the Debtor's

11   business judgment to keep CTMC as financial advisors, and withdraw its request to employ me

12   as CRO.

13       8.    In reality, while I am no longer taking on the title of CRO, as the employment

14   application for CTMC indicated, the CRO and CTMC (as financial advisors) were to work

15   collaboratively to render essentially the same types of services to the Debtor, which CTMC and I

16   (as the principal of CTMC) have done and continue to do so on a daily basis.  A key aspect of the

17   services to be rendered is to control all of the currency that is obtained by the Debtor and spent

18   by the Debtor on a daily basis.  This key aspect continues to be within the exclusive control of

19   CTMC, with me being the sole signatory to all DIP Accounts.

20       9.    In the approximately four weeks since the Petition Date, CTMC has spent every

21   business day ensconced at the Debtor's main corporate office and other facilities, familiarizing

22   itself with the Debtor's business operations, facilities, personnel, and books and records,

23   reviewing and assessing the Debtor's accounting and cash management practices and procedures,

24   and investigating the allegations that have been made by Center.  In summary, CTMC's review

25   and assessment of the Debtor's business operations and accounting/cash management practices

26   confirm that, while the Debtor's accounting and cash management systems may be rudimentary

27   for a business of its size and complexity and require improvement, such systems do, in fact,

28

1    already exist, are routinely followed, and are traceable and auditable.  With a sound

2    understanding of the Debtor's operations as well as its weaknesses, CTMC has also now

3    developed and implemented for the Debtor, and educated the Debtor to use, certain accounting

4    software and methods to track its transactions in a more efficient manner.  CTMC is also

5    assisting the Debtor with regard to pricing and other discrete operational matters.  In addition to

6    these high-priority, forward looking tasks, CTMC is also having forensic personnel review data

7    related to the Debtor's pre-petition transactions.

8        10.    I have reviewed the motion filed by the Center Bank, the Debtor's primary

9    secured lender ("the "<u>Bank</u>" or "<u>Center</u>") for the appointment of an examiner (the "<u>Examiner</u>

10   <u>Motion</u>").  Given the serious nature of the Bank's allegations, CTMC has expended a substantial

11   amount of time investigating such allegations.

12       11.    The Debtor is a fully integrated scrap metal processing company that purchases,

13   processes and sells ferrous and non-ferrous metals domestically and internationally.  The Debtor

14   currently operates out of five (5) active facilities throughout Southern California – two facilities

15   in the Los Angeles County area, one facility in Barstow/Hinkley, one facility in San Bernardino,

16   and one facility in Bakersfield.

17       12.    Attached as Exhibit "1" hereto is a cash flow summary of the Debtor's

18   performance during the first four weeks covered by the Debtor's cash collateral budget (which I

19   understand was approved by the Court).  This cash flow summary provides both the projected

20   and actual performance for these periods, as well as the resulting variance.  Based on my review

21   of the Debtor's performance, as reflected in the cash flow summary, the Debtor has been mostly

22   on track, or exceeding, its projected weekly beginning cash position.  As the cash flow summary

23   also indicates, the Debtor is continuing to purchase sufficient amounts of scrap metal to replenish

24   sold inventory, thereby maintaining what I believe are adequate inventory levels.

25   ///

26   ///

27   ///

28

13.    The Debtor, with CTMC's assistance, is currently focused on stabilizing its business operations and improving its cash management and accounting systems. In addition, it is my understanding and belief that the Debtor is in the process of negotiating with its equipment lenders in order to reach a consensual resolution regarding the treatment of their respective claims in this case (and potentially, under a plan of reorganization). To the extent the Debtor is not able to reach a consensual resolution with one or more of its equipment lenders (regarding the characterization of the underlying agreements and/or the treatment of their claims), it is further my understanding and belief that the Debtor will commence adversary proceedings to obtain judicial determinations of such matters. I believe that the resolution of the Debtor's disputes with the equipment lenders will pave the way for the formulation of a feasible plan of reorganization. Since an expeditious resolution of the Debtor's disputes with the Bank does not appear, at this point, to be realistic, it is my understanding and belief that the Debtor is also exploring, among other things, the possibility of obtaining financing to take Center out or fund a plan of reorganization which provides for the reinstatement and cure of the Debtor's loans with Center. In addition, it is my understanding and belief that the Debtor is exploring the possibility of selling some or substantially all of its assets and locating a financial partner.

14.    I believe that the Debtor requires additional time to address the issues discussed above, develop and pursue its reorganization options and strategies, and file a plan of reorganization and disclosure statement.

15.    Attached as Exhibit "2" hereto is a "Professional Compensation and Fee Budget" for CTMC.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 11th day of February 2010, at Los Angeles, California.

Charles T. Moffitt, Declarant

14

# EXHIBIT "1"

## Reporting Summary - Cash Flow

Central Metal, Inc. - DIP

| | Week 2 16 Jan | | | Week 3 23 Jan | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | Planned | Actual | Variance | Planned | Actual | Variance | Cumulative Variance |
| **Beginning Cash Balance** | 24,542.00 | 441,662.99 | 417,120.99 | 457,637.00 | 435,679.40 | (21,957.60) | 395,163.39 |
| **Cash In** | | | | | | | |
| Cash Received from Current Sales | 594,220.00 | 109,546.60 | (484,673.40) | 685,800.00 | 733,032.12 | 47,232.12 | (437,441.28) |
| Collection from Receivables | - | - | - | - | - | - | - |
| Other Cash Received | - | - | - | - | - | - | - |
| **Total Cash In** | $ 594,220.00 | $ 109,546.60 | $ (484,673.40) | $ 685,800.00 | $ 733,032.12 | $ 47,232.12 | $ (437,441.28) |
| **Total Available Cash** | $ 618,762.00 | $ 551,209.59 | $ (67,552.41) | $ 1,143,437.00 | $ 1,168,711.52 | $ 25,274.52 | $ (42,277.89) |
| **Cash Out** | | | | | | | |
| Direct Expenses | 86,111.00 | 90,530.19 | 4,419.19 | 626,629.00 | 499,738.34 | (126,890.66) | (122,471.47) |
| Indirect Expenses | 75,014.00 | 25,000.00 | (50,014.00) | 106,299.00 | 104,475.48 | (1,823.52) | (51,837.52) |
| Center Bank Payments | - | - | - | 30,000.00 | 30,000.00 | - | - |
| Other Expenses | - | - | - | - | - | - | - |
| **Total Cash Out** | $ 161,125.00 | $ 115,530.19 | $ (45,594.81) | $ 762,928.00 | $ 634,213.82 | $ (128,714.18) | $ (174,308.99) |
| **Net Available Cash** | $ 457,637.00 | $ 435,679.40 | $ (21,957.60) | $ 380,509.00 | $ 534,497.70 | $ 153,988.70 | $ 132,031.10 |
| **Ending Balance** | 457,637.00 | 435,679.40 | (21,957.60) | 380,509.00 | 534,497.70 | 153,988.70 | 132,031.10 |

### Notes

Week 1 (ending January 9) is omitted as it was only two days and no activity occurred.

Opening balance includes $428,814.66 deposited to DIP account from Pre-Petition accounts and $12,848.33 cash-on-hand.

Projected amounts ("Planned") are based on the Cash Flow prepared by Michael Park Accounting (CPA) and Debtor.

Receipt of collections in Week 2 were delayed due to establishment of a qualified D.I.P. account.

Direct Expenses include disbursements made to purchase materials (scrap metal). Many of these disbursements are supervised cash transactions.



1/26/2010

**Reporting Summary - Cash Flow**

Central Metal, Inc. - DIP

| | Week 4 30 Jan | | | Week 5 06 Feb | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | Planned | Actual | Variance | Planned | Actual | Variance | Cumulative Variance |
| **Beginning Cash Balance** | $    380,509 | $    534,498 | $    153,989 | $    179,136 | $    242,451 | $    63,315 | $    612,467 |
| **Cash In** | | | | | | | |
| Cash Received from Current Sales | 698,950 | 445,659 | (253,291) | 934,200 | 918,433 | (15,767) | $    (706,500) |
| **Total Cash In** | 698,950 | 445,659 | (253,291) | 934,200 | 918,433 | (15,767) | (706,500) |
| **Total Available Cash** | 1,079,459 | 980,156 | (99,303) | 1,113,336 | 1,160,884 | 47,548 | (42,278) |
| **Cash Out** | | | | | | | |
| Direct Expenses | 684,994 | 598,381 | (86,613) | 684,994 | 557,558 | (127,436) | $    (336,520) |
| Indirect Expenses | 215,329 | 139,324 | (76,005) | 181,879 | 277,981 | 96,102 | $    (31,741) |
| **Total Cash Out** | 900,323 | 737,705 | (162,618) | 866,873 | 835,539 | (31,334) | (368,261) |
| **Net Available Cash** | 179,136 | 242,451 | 63,315 | 246,464 | 325,345 | 78,882 | 132,031 |
| **Ending Balance** | $    179,136 | $    242,451 | $    63,315 | $    246,464 | $    325,345 | $    78,882 | $    274,228 |

Notes

Weekly adequate protection payments to Central Bank ($30,000) are included in indirect expenses.



2/10/2010

# EXHIBIT "2"

# EXHIBIT "2"
## TO DECLARATION OF CHARLES T. MOFFITT

PROFESSIONAL COMPENSATION & REIMBURSEMENT BUDGET

**Case Number:**     2:10-bk-10642-VZ

**Case Name:**      Central Metal, Inc.

**Date Commenced:**   January 8, 2010

**Applicant Name:**   C.T. Moffitt & Company

**Location:**       Los Angeles, California

**Type of Services already rendered, and to be rendered, in CTMC's capacity as financial advisors include, but are not limited to:**

Undertaking an independent analysis and review of the Debtor's business and operations, including the Debtor's cash management and financial and accounting controls of the business. Conducting a forensic audit of past company transactions to determine whether funds have been improperly diverted.  Modifying the company's handling of currency transactions in order to insure the proper reporting and depositing into debtor-in possession-bank accounts of all collections and payments. Preparation of all financial data and reports, including the Debtor's cash flow projections. Fulfilling all bankruptcy reporting requirements of the U.S. Trustee, including initial information packages. Installing new accounting systems and procedures, inputting historical data into the new systems, and training of company personnel in accounting methods, bankruptcy reporting and schedules. Working with company personnel to prepare a viable turnaround plan. Providing all other financial advisory, turnaround and restructuring services as needed by the Debtor.  In addition to the foregoing, Charles Moffitt is the sole individual with check writing and payment authority on all debtor- in- possession bank accounts.

**Category:**     Business Operations

Professional

| Name | Hourly Rate ($/hr) | Total ($) |
|------|--------------------|-----------|
| Charles T. Moffitt | $410 (@ 250 hours) | $102,500 |
| Andrew C. Harvey | $375 (@ 450 hours) | $168,750 |
| David Adams | $350 (@ 400 hours) | $140,000 |

Expenses & Costs:     $0

**Total for Category:  $411,250**

15

**Category:**    <u>Case Administration</u>

<u>Professional</u>

| Name | Hourly Rate ($/hr) | Total ($) |
|------|--------------------|-----------|
| Charles T. Moffitt | $410 (@ 20 hours) | $8,200 |
| Andrew C. Harvey | $375 (@ 10 hours) | $3,750 |

<u>Expenses & Costs</u>:    $0

**Total for Category:  $11,950**

**Category:**    <u>Litigation</u>

<u>Professional</u>

| Name | Hourly Rate ($/hr) | Total ($) |
|------|--------------------|-----------|
| Charles T. Moffitt | $410 (@ 60 hours) | $24,600 |
| Andrew C. Harvey | $375 (@ 5 hours) | $1,875 |
| Lori Payne | $395 (@ 65 hours) | $25,675 |

<u>Expenses & Costs</u>:    $0

**Total for Category:  $52,150**

1

## **DECLARATION OF JULIET Y. OH, ESQ.**

2      I, Juliet Y. Oh, Esq., hereby declare as follows:

3      1.      I have personal knowledge of the facts set forth herein, and, if called as a witness,

4  could and would testify competently with respect thereto.

5      2.      I am a partner at the law firm of Levene, Neale, Bender, Rankin & Brill L.L.P.

6  ("LNBRB"), proposed bankruptcy counsel to Central Metal, Inc., a California corporation,

7  Chapter 11 debtor and debtor in possession herein (the "Debtor").  I am licensed to practice law

8  in the State of California and before this Court.

9      3.      The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code

10  on January 8, 2010 (the "Petition Date").  The Debtor continues to operate its business, manage

11  its financial affairs and operate its bankruptcy estate as a debtor in possession pursuant to

12  Sections 1107 and 1108 of the Bankruptcy Code.

13      4.      The Debtor filed its application to employ LNBRB as its general bankruptcy

14  counsel (the "LNBRB Application") on January 11, 2010.  No objection to, or request for

15  hearing on, the LNBRB Application has been filed.  I have filed with the Court a declaration

16  regarding non-opposition to the LNBRB Application and lodged with the Court a proposed order

17  approving the LNBRB Application, in accordance with Local Bankruptcy Rules 2014-1(b)(4)

18  and 9013-1(o)(3).  Attached as Exhibit "A" hereto is a "Professional Compensation and Fee

19  Budget" for LNBRB.

20      5.      To the best of my knowledge, the Debtor has complied with the requirements of

21  the Office of the United States Trustee ("OUST") by, among other things, filing its "7-Day

22  Package" with the OUST on January 29, 2010 (within the extended time period agreed to by the

23  OUST).

24      6.      I caused the filing of the Debtor's Schedules of Assets and Liabilities and

25  Statement of Financial Affairs on February 2, 2010, within the extended time period by which

26  the Debtor was ordered by the Court to do so.

27

28

7.      On February 9, 2010, the Debtor, with counsel, attended the meeting of creditors conducted by the OUST pursuant to 11 U.S.C. § 341(a).

8.      At the outset of the Debtor's case, the Debtor hired C.T. Moffitt & Company ("CTMC") to serve as the Debtor's financial advisors and Charles T. Moffitt (the principal of CTMC) to serve as Chief Restructuring Officer ("CRO") of the Debtor.  On January 12, 2010, I caused the Debtor to file an employment application for CTMC and Moffitt to reflect these roles (the "CTMC Application").  No opposition or request for hearing has been filed with respect to the CTMC Application.  However, before the deadline for objecting to the CTMC Application passed, Dare Law, the attorney representing the OUST, notified me that, as a policy matter and without any exception, the OUST will object to an employment wherein the proposed financial advisors and the CRO are in effect the same person due to potential conflicts of interest.  More specifically, the OUST expressed that, from its perspective, financial advisors are employed as independent consultants to the bankruptcy estate, and have fiduciary obligations to the estate and its creditors.  On the other hand, a CRO becomes an employee and manager of the debtor, and, therefore, is not strictly independent.  As a result, it is impossible for the same individual to "wear two hats" and "serve different masters."

9.      In response to the OUST's objection, the Debtor and CTMC have agreed to modify the CTMC Application to withdraw the request to employ Moffitt as CRO.  On behalf of the Debtor, I will be filing a supplement and modification to the CTMC Application which reflects such agreement shortly.

10.      On January 22, 2010, the OUST provided notice of its appointment of an Official Committee of Unsecured Creditors (the "Committee") in the Debtor's case.  The Debtor, through counsel, has communicated with proposed counsel for the Committee with respect to a variety of issues relating to this case.

11.      On January 22, 2010, the Debtor's primary secured lender, Center Bank ("the "Bank" or "Center") filed a motion for the appointment of an examiner (the "Examiner Motion"), which is currently set for hearing on February 23, 2010 at 11:00 a.m.  A total of two

1    joinders to the Examiner Motion have been filed by three equipment lessors/lenders.  I caused

2    the filing of the Debtor's opposition to the Examiner Motion on February 9, 2010.  The

3    Committee has also filed an opposition to the Examiner Motion.  Numerous depositions have

4    been scheduled by the Bank and the Debtor in connection with the Examiner Motion.

5         12.    On January 12, 2010, I caused the filing of the Debtor's emergency motion

6    seeking use of cash collateral on an interim basis pending a final hearing (the "Cash Collateral

7    Motion").  Immediately prior to the emergency hearing on the Cash Collateral Motion on

8    January 14, 2010 at 11 a.m., the Debtor and the Bank reached a stipulation providing for the

9    Debtor's interim use of cash collateral through February 18, 2010 (the "Cash Collateral

10   Stipulation"), substantially in accordance with an operating budget submitted by the Debtor (the

11   "First Budget").  The Cash Collateral Stipulation was approved by the Court, subject to certain

12   modifications set forth on the record of the hearing on the Cash Collateral Motion.  As it relates

13   to creditors other than the Bank who assert liens in the Debtor's cash collateral, the Cash

14   Collateral Motion was granted and the Debtor was given authority to use cash collateral in

15   accordance with the terms and conditions set forth in the Cash Collateral Motion.

16        13.    On January 29, 2010, I caused the filing of the Debtor's supplement to the Cash

17   Collateral Motion (the "Cash Collateral Supplement"), pursuant to which the Debtor seeks

18   authority to use cash collateral in accordance with an operating budget which encompasses the

19   period from the week ending January 30, 2010 through the week ending March 20, 2010 (the

20   "Second Budget").  The Bank filed an opposition to the Debtor's Cash Collateral Supplement on

21   February 9, 2010, and the Debtor filed its reply to the Bank's opposition on February 11, 2010.

22   A hearing on the Debtor's continued use of cash collateral is currently scheduled for February

23   16, 2010 at 1:30 p.m.

24        14.    To the best of my knowledge, the Debtor was a party to litigation commenced by

25   two of its equipment lessors/lenders, Center Capital Corporation ("Center Capital") and Banc of

26   America Leasing & Capital, LLC ("Banc of America").  Both matters have been stayed by

27   operation of the automatic stay pursuant to 11 U.S.C. § 362.

28

15.     Prior to the Petition Date, the Debtor entered into a variety of equipment leases which are not true leases at all, but, rather, disguised sales.  There appears to be five equipment lenders involved in this case, including Center Capital and Banc of America, and preliminarily, three of these five lenders, through counsel, have acknowledged that the transactions were disguised sales.  The Debtor and these lenders, through counsel, are cooperating to inspect and appraise the equipment in order to reach a compromise as to the secured claims that these lenders must be provided for under the Debtor's reorganization plan.  With regard to those lenders that have not acknowledged the legal nature of the transactions as being disguised sales, the Debtor has instructed LNBRB to commence adversary proceedings to seek a judicial determination as such.

16.     The Debtor is currently engaged in discovery with the Bank in connection with the Examiner Motion and the Debtor's request for continued use of cash collateral.  In addition, it has become increasingly clear to me, as counsel for the Debtor, that there will be litigation by and among the Debtor, the Bank and Focus Management Group ("Focus"), the turnaround consulting firm hired pre-petition by the Debtor at the instruction of the Bank.

17.     The Debtor has engaged special litigation counsel to pursue its claims against the Bank and Focus, which claims are likely to encompass a variety of lender liability and breach of fiduciary duty issues, among others.  I am currently in the process of preparing an application to employ the Debtor's special litigation counsel and expect to finalize and file such application prior to the status conference.

18.     The Debtor's exclusive period to file a plan of reorganization under 11 U.S.C. § 1121 does not expire until May 8, 2010.

///

///

///

///

///

19.    If the Court establishes a claims bar date of April 16, 2010 in the Debtor's case, LNBRB will mail notice of that bar date to all known creditors and interest holders on or before March 2, 2010, in accordance with Local Bankruptcy Rule 3001-1.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.  Executed this 11th day of February, 2010, at Los Angeles, California.


_____*/s/ Juliet Y. Oh*_____
Juliet Y. Oh, Esq., Declarant

# EXHIBIT "A"

**EXHIBIT "A"**
**TO DECLARATION OF JULIET Y. OH, ESQ.**

PROFESSIONAL COMPENSATION & REIMBURSEMENT BUDGET

**Case Number:**      2:10-bk-10642-VZ

**Case Name:**       Central Metal, Inc.

**Date Commenced:**  January 8, 2010

**Applicant Name:**   Levene, Neale, Bender, Rankin & Brill L.L.P.

**Location:**        Los Angeles, California

**Type of services to be rendered in LNBRB's capacity as general bankruptcy counsel include, but are not limited to:**

Advising the Debtor with regard to the requirements of the Bankruptcy Court, Bankruptcy Code, Bankruptcy Rules and the Office of the United States Trustee as they pertain to the Debtor; advising the Debtor with regard to certain rights and remedies of its bankruptcy estate and the rights, claims and interests of creditors; representing the Debtor in any proceeding or hearing in the Bankruptcy Court involving its estate unless the Debtor is represented in such proceeding or hearing by other special counsel; conducting examinations of witnesses, claimants or adverse parties and representing the Debtor in any adversary proceeding except to the extent that any such adversary proceeding is in an area outside of LNBRB's expertise or which is beyond LNBRB's staffing capabilities; preparing and assisting the Debtor in the preparation of reports, applications, pleadings and orders including, but not limited to, applications to employ professionals, interim statements and operating reports, initial filing requirements, schedules and statement of financial affairs, lease pleadings, cash collateral pleadings, financing pleadings, and pleadings with respect to the Debtor's use, sale or lease of property outside the ordinary course of business; representing the Debtor with regard to obtaining use of debtor in possession financing and/or cash collateral including, but not limited to, negotiating and seeking Bankruptcy Court approval of any debtor in possession financing and/or cash collateral pleading or stipulation and preparing any pleadings relating to obtaining use of debtor in possession financing and/or cash collateral; assisting the Debtor in the negotiation, formulation, preparation and confirmation of a plan of reorganization and the preparation and approval of a disclosure statement in respect of the plan; and performing any other services which may be appropriate in LNBRB's representation of the Debtor during its bankruptcy case.

**Category:**     Asset Analysis/Recovery/Disposition

Professional

| Name | Hourly Rate ($/hr) | Total ($) |
|---|---|---|
| Monica Y. Kim ( P) | $540 (@ 40 hrs) | $21,600 |
| Juliet Y. Oh  (P) | $485 (@ 50 hrs) | $24,250 |
| Krikor J. Meshefejian  (A) | $335 (@ 60 hrs) | $20,100 |
| Angela Antonio/Marguerite Mardin (PL) | $195 (@ 10 hrs) | $1,950 |

Expenses & Costs:     $2,000

**Total for Category:**  $69,900

**Category:**     Case Administration

Professional

| Name | Hourly Rate ($/hr) | Total ($) |
|---|---|---|
| Monica Y. Kim ( P) | $540 (@ 100 hrs) | $54,000 |
| Juliet Y. Oh  (P) | $485 (@ 120 hrs) | $58,200 |
| Krikor J. Meshefejian  (A) | $335 (@ 75 hrs) | $25,125 |
| Angela Antonio/Marguerite Mardin (PL) | $195 (@ 25 hrs) | $4,875 |

Expenses & Costs:     $7,500

**Total for Category:**  $149,700

**Category:**     Financing

Professional

| Name | Hourly Rate ($/hr) | Total ($) |
|---|---|---|
| Monica Y. Kim ( P) | $540 (@ 50 hrs) | $27,000 |
| Juliet Y. Oh  (P) | $485 (@ 50 hrs) | $24,250 |
| Krikor J. Meshefejian  (A) | $335 (@ 20 hrs) | $6,700 |
| Angela Antonio/Marguerite Mardin (PL) | $195 (@ 10 hrs) | $1,950 |

<u>Expenses & Costs</u>:    $2,500

**Total for Category:**  $62,400

**Category:**    <u>Litigation</u> (This category includes litigation which is otherwise not contemplated within the above-listed categories)

<u>Professional</u>

| Name | Hourly Rate ($/hr) | Total ($) |
|------|-------------------|-----------|
| Monica Y. Kim ( P) | $540 (@ 60 hrs) | $32,400 |
| Juliet Y. Oh  (P) | $485 (@ 75 hrs) | $36,375 |
| Krikor J. Meshefejian (A) | $335 (@ 40 hrs) | $13,400 |
| Angela Antonio/Marguerite Mardin (PL) | $195 (@ 10 hrs) | $1,950 |

<u>Expenses & Costs</u>:    $2,500

**Total for Category:**  $86,625

*The figures provided herein are only **estimates**.  Actual fees and expenses incurred may be different than estimated.

| In re:<br>CENTRAL METAL, INC. | Debtor. | Chapter 11<br>2:10-bk-10642-VZ |
|---|---|---|

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
10250 Constellation Boulevard, Suite 1700, Los Angeles, California 90067.

A true and correct copy of the foregoing document described as

**DEBTOR IN POSSESSION'S REPORT ON STATUS OF REORGANIZATION CASE; DECLARATIONS OF CHARLES T. MOFFITT AND JULIET Y. OH, ESQ. IN SUPPORT THEREOF**

will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On February 11, 2010 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Andrew K Alper    aalper@frandzel.com, efiling@frandzel.com;ekidder@frandzel.com
- John H Choi    johnchoi@kpcylaw.com
- Dennis A Dressler    ddressler@dresslerpeters.com
- Jason E Goldstein    jgoldstein@buchalter.com, bkgroup@buchalter.com
- Joon M Khang    joon@khanglaw.com
- Monica Y Kim    myk@lnbrb.com
- Dare Law    dare.law@usdoj.gov
- Juliet Y Oh    jyo@lnbrb.com, jyo@lnbrb.com
- Steven G Polard    spolard@perkinscoie.com
- Richard A Solomon    richard@sgsslaw.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Scott H Yun    syun@stutman.com

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On February 11, 2010 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

*By U.S. mail:*
*Secured creditors and their counsel*
*Parties requesting notice*
*Creditors' Committee and its counsel*
*20 largest unsecured creditors*
*(See attached)*

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on February 11, 2010 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                                        **F 9013-3.1**

| In re:<br>CENTRAL METAL, INC. | Debtor. | Chapter 11<br>2:10-bk-10642-VZ |
|---|---|---|

*By attorney service:*
*The Honorable Vincent P. Zurzolo*
*255 East Temple Street*
*Los Angeles, CA 90012*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| February 11, 2010 | Marguerite Hardin | */s/ Marguerite Hardin* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1**

In re Central Metal, Inc.
Case No. 2:10-bk-10642-VZ
File No. 4516

**RSN**

Central Metal, Inc.
8201 Santa Fe Avenue
Huntington Park, CA 90255

U.S. Trustee
Attn:  Dare Law, Esq.
Ernst & Young Plaza
725 S. Figueroa Street, 26th Floor
Los Angeles, CA 90017

**Counsel for Banc of America Leasing**
Andre K. Alper Esq
Banc of America Leasing & Capital
6500 Wilshire Blvd., 17th Floor
Los Angeles, CA 90048

**Counsel for Center Bank**
Steven G.F. Polard, Esq.
Perkins Coie LLP
1888 Century Park East, Ste 1700
Los Angeles, CA 90067

**Counsel for Center Capital Corp**
Dennis A. Dressler Esq
Dressler & Peters LLC
111 W. Washington St., #1900
Chicago, IL 60602

**Member of Creditors' Committee**
Noriyo Kida
13166 Alta Vista Way
Sylmar, CA 91342

**Member of Creditors' Committee**
Sun Construction
Attn:  Youngt Choi, Owner
26071 Hinckley Street
Loma Linda, CA 92354

**Member of Creditors' Committee**
Bay City Trading
Attn:  David Lee, President
2885 W. 232nd St
Torrance, CA 90505

**Member of Creditors' Committee**
H. West Equipment, Inc.
Attn:  Kim Jaker, President
2 Strathmore
Ladera Ranch, CA 92694

**CT Moffit & Company**
137 So. Bedford Drive
Beverly Hills, CA 90212

**(Proposed) counsel for Committee**
Scott Yun, Esq.
Stutman Treister & Glatt
1901 Ave Of The Stars 12FL
Los Angeles, CA 90067-6013

**Counsel for Peoples Capital & Leasing**
Richard A. Solomon, Esq.
Solomon, Grindle, et al.
12651 High Bluff Drive, #300
San Diego, CA 92130

In re Central Metal, Inc.
Case No. 2:10-bk-10642-VZ
20 Largest

Central Metal, Inc.
8201 Santa Fe Avenue
Huntington Park, CA 90255

U.S. Trustee
Ernst & Young Plaza
725 S. Figueroa Street, 26th Floor
Los Angeles, CA 90017

Sun Construction
26071 Hinckley Street
Loma Linda, CA 92354

Bay City Trading
2390 Crenshaw Blvd #319
Torrance, CA 90501

Zimex Logitech, Inc.
5400 Orange Avenue, Suite 108
Cypress, CA 90630

US Bank
P.O. Box 790408
Saint Louis, MO 63179

American Express
P.O. Box 981535
El Paso, TX 79998

Bank of America
P.O. Box 851001
Dallas, TX 75285

In re Central Metal, Inc.
Case No. 2:10-bk-10642-VZ
**Secured**

Central Metal, Inc.
8201 Santa Fe Avenue
Huntington Park, CA 90255

U.S. Trustee
Ernst & Young Plaza
725 S. Figueroa Street, 26th Floor
Los Angeles, CA 90017

American Honda Finance Corp.
P.O. Box 6070
Cypress, CA 90630-6070

~~Bank of America~~
~~c/o Frandzel, Robbins, Bloom, et al~~
~~6500 Wilshire Blvd., 17th Floor~~
~~Los Angeles, CA 90048-4920~~
**Represented by counsel; See RSN list**

~~Center Bank~~
~~3435 Wilshire Blvd., Suite 700~~
~~Attn: Lisa K. Pai~~
~~Los Angeles, CA 90010~~
**Represented by counsel; See RSN list**

~~Center Capital Corporation~~
~~P.O. Box 330~~
~~Hartford, CT 06141~~
**Represented by counsel; See RSN list**

Chase
P.O. Box 78067
Phoenix, AZ 85062-8067

GE
300 E. John Carpenter Fwy, 4th Fl
Attn: Rena Harris
Irving, TX 75062
888-223-9760
Ge.com

~~H. West Equipment, Inc.~~
~~645 N. Main Street~~
~~Orange, CA 92868-1103~~
**Member of Creditors' Committee**
**See RSN list**

Lexus Financial Services
P.O. Box 2991
Mail Drop L201
Torrance, CA 90509

~~People's Capital and Leasing Corp~~
~~255 Bank Street~~
~~Attn: Jeffrey A. Kennedy~~
~~Waterbury, CT 06702-2219~~
**Represented by counsel; see below**

The CIT Group/Equipment Financing
305 Fellowship Road, Suite 300
Attn: Paul Plunkett
Mount Laurel, NJ 08054
877-853-4270

Wilshire State Bank
Jennifer Kang, AVP & Loan Officer
3832 Wilshire Blvd.
Los Angeles, CA 90010
213-427-6535
www.wilshirebank.com

Counsel for Center Bank
Steven G. Polard, Esq.
Perkins Coie LLP
1888 Century Park East, Ste 1700
Los Angeles, CA 90067-1721
See RSN list

**Counsel for Peoples Capital & Leasing**
Richard A. Solomon, Esq.
Solomon, Grindle, et al.
12651 High Bluff Drive, #300
San Diego, CA 92130
See RSN list