Monica Y. Kim (SBN 180139)
Juliet Y. Oh (SBN 211414)
Levene, Neale, Bender, Rankin & Brill L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: myk@lnbrb.com, jyo@lnbrb.com
Proposed Attorneys for Chapter 11 Debtor
and Debtor in Possession

Steven G. F. Polard, Bar No. 90319
SPolard@perkinscoie.com
Jeffrey S. Goodfried, Bar No. 253804
JGoodfried@perkinscoie.com
**PERKINS COIE LLP**
1888 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: 310.788.9900
Facsimile: 310.788.3399
Attorneys for Secured Creditor
Center Bank, a California state charted bank

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:10-BK-10642-VZ |
| CENTRAL METAL, INC., a California corporation; | Chapter: 11 |
| | **SECOND STIPULATION REGARDING INTERIM USE OF CASH COLLATERAL** |
| Debtor. | |
| | Date:    February 16, 2010 |
| | Time:    1:30 p.m. |
| | Place:    Courtroom 1368 |
| | 255 East Temple Street |
| | Los Angeles, California |

This Stipulation re Interim Use of Cash Collateral (the "Stipulation") is entered into by and between secured creditor Center Bank, a California state charted bank ("Lender" or "Center Bank") by and through its counsel, Steven G. Polard and Jeffrey S. Goodfried of Perkins Coie LLP, and Central Metal, Inc., as Debtor-in-Possession ("Debtor"), by and through its counsel, Juliet Y. Oh and Monica Y. Kim of Levene, Neale, Bender, Rankin & Brill L.L.P., and is made with reference to the following facts:

## RECITALS

### THE LOAN DOCUMENTS

**A.    Loan I (No. 750735)**

1.      Lender contends that on or about May 24, 2006, Center Bank made Loan No. 750735 to Jong Uk Byun ("Byun"), Bok Soon Byun ("Bok"), and Central Metal, Inc ("Central Metal") (collectively, "Loan I Borrowers") in the original amount of $11,000,000 ("Loan I").

2.      Lender contends that Loan I is evidenced by, among other instruments, that certain Promissory Note ("Note I"), dated May 24, 2006, executed by Loan I Borrowers in favor of Center Bank in the original principal sum of $11,000,000; and that certain Business Loan Agreement ("Loan Agreement I"), dated May 24, 2006, executed by and between Loan I Borrowers and Center Bank. Furthermore, Lender contends that Loan I is secured by, among other things, that certain Deed of Trust (which includes an assignment of inter alia rents and profits) ("Deed of Trust I") dated May 24, 2006, executed by Loan I Borrowers, as trustors, to Chicago Title Company, as trustee, for the benefit of Center Bank, as beneficiary. Lender contends that the Deed of Trust was recorded in the Official Records of Los Angeles County, California (the "Official Records") on May 26, 2006, as Document No. 06-1161737. Lender contends that the Debtor only owns Parcel 5 of Property B identified in such Deed of Trust I. Lender contends that because of the Cross-collateralization provisions of the Commercial Security Agreements and the UCC-1 filed

-2-

1  on May 26, 2006 in California all referenced below, Loan I is also secured by a first
2  priority unavoidable lien on all personal property of the Debtor.

3       3.      Note I, Loan Agreement I, and Deed of Trust I, and all other documents
4  which evidence, secure, or relate to Loan I, may be hereinafter collectively referred to as
5  "Loan Documents I." Lender contends that Lender at all relevant times is the holder of
6  Loan I, the payee of Note I, the beneficiary under Deed of Trust I, and the holder of the
7  other Loan Documents I.

8  **B.    Loan II (No. 750737)**

9       4.      Lender contends that on or about May 24, 2006, Center Bank made Loan
10 No. 750737 to Byun, Bok, and Central Metal (collectively, "Loan II Borrowers") in the
11 original amount of $3,000,000 ("Loan II").

12      5.      Lender contends that Loan II is evidenced by, among other instruments, that
13 certain Promissory Note ("Note II"), dated May 24, 2006, executed by Loan II Borrowers
14 in favor of Center Bank in the original principal sum of $3,000,000; and that certain
15 Business Loan Agreement ("Loan Agreement II"), dated May 24, 2006, executed by and
16 between Loan II Borrowers and Center Bank. Furthermore, Lender contends that Loan II
17 is secured by, among other things, that certain Deed of Trust ("Deed of Trust II") dated
18 May 24, 2006, executed by Loan II Borrowers, as trustors, to Chicago Title Company, as
19 trustee, for the benefit of Center Bank, as beneficiary. Lender contends that Deed of Trust
20 II was recorded in the Official Records on May 26, 2006, as Document No. 06-1161738

21      6.      Note II, Loan Agreement II, and Deed of Trust II, and all other documents
22 which evidence, secure, or relate to Loan II, may be hereinafter collectively referred to as
23 "Loan Documents II." Lender contends that Lender at all relevant times is the holder of
24 Loan II, the payee of Note II, the beneficiary under Deed of Trust II, and the holder of the
25 other Loan Documents II. Lender contends that the Debtor only owns Parcel 5 of
26 Property B identified in such Deed of Trust II. Lender contends that because of the Cross-
27 collateralization provisions of the Commercial Security Agreements and the UCC-1 filed

28

-3-

1   on May 26, 2006 in California all referenced below, Loan II is also secured by a first

2   priority unavoidable lien on all personal property of the Debtor.

3   **C.   Loan III (No. 757068)**

4       7.   Lender contends that on or about November 9, 2007, Center Bank made

5   Loan No. 757068 to Central Metal ("Loan III Borrower") in the original amount of

6   $1,500,000 ("Loan III").

7       8.   Lender contends that Loan III is evidenced by, among other instruments,

8   that certain Promissory Note ("Note III"), dated November 9, 2007, executed by Loan III

9   Borrower in favor of Center Bank in the original principal sum of $1,500,000; and that

10  certain Business Loan Agreement ("Loan Agreement III"), dated November 9, 2007,

11  executed by and between Loan III Borrower and Center Bank. Furthermore, Lender

12  contends that Loan III is secured by, among other things, that certain Deed of Trust

13  ("Deed of Trust III") dated November 9, 2007, executed by Loan III Borrower, as trustors,

14  to Chicago Title Company, as trustee, for the benefit of Center Bank, as beneficiary; and

15  that certain Commercial Security Agreement ("Commercial Security Agreement III"),

16  dated November 9, 2007, executed by and between Loan III Borrower, as grantor, and

17  Center Bank, as lender. Lender contends that Deed of Trust III was recorded in the

18  Official Records on November 15, 2007, as Document No. 20072549898. Lender

19  contends that Loan III is also secured by a first priority unavoidable lien on all personal

20  property of the Debtor.

21      9.   Note III, Loan Agreement III, and Deed of Trust III, and all other

22  documents which evidence, secure, or relate to Loan III, may be hereinafter collectively

23  referred to as "Loan Documents III." Lender contends that Center Bank at all relevant

24  times is the holder of Loan III, the payee of Note III, the beneficiary under Deed of Trust

25  III, and the holder of the other Loan Documents III.

26

27

28

**D.**     **Loan IV (No. 757070)**

10.     Lender contends that on or about November 9, 2007, Center Bank made Loan No. 757070 to Central Metal ("Loan IV Borrower") in the original amount of $1,000,000 ("Loan IV").

11.     Lender contends that Loan IV is evidenced by, among other instruments, that certain Promissory Note ("Note IV"), dated November 9, 2007, executed by Loan IV Borrower in favor of Center Bank in the original principal sum of $1,000,000; and that certain Business Loan Agreement ("Loan Agreement IV"), dated November 9, 2007, executed by and between Loan IV Borrower and Center Bank. Furthermore, Lender contends that Loan IV is secured by, among other things, that certain Deed of Trust ("Deed of Trust IV") dated November 9, 2007, executed by Loan IV Borrower, as trustors, to Chicago Title Company, as trustee, for the benefit of Center Bank, as beneficiary; and that certain Commercial Security Agreement ("Commercial Security Agreement IV"), dated November 9, 2007, executed by and between Loan IV Borrower, as grantor, and Center Bank, as lender. Lender contends that Deed of Trust IV was recorded in the Official Records on November 15, 2007, as Document No. 20072549898. Lender contends that Loan IV is also secured by a first priority unavoidable lien on all personal property of the Debtor.

12.     Note IV, Loan Agreement IV, and Deed of Trust IV, and all other documents which evidence, secure, or relate to Loan IV, may be hereinafter collectively referred to as "Loan Documents IV." Lender contends that Center Bank at all relevant times is the holder of Loan IV, the payee of Note IV, the beneficiary under Deed of Trust IV, and the holder of the other Loan Documents IV.

**E.**     **Loan V (No. 757072)**

13.     Lender contends that on or about November 9, 2007, Center Bank made Loan No. 757072 to Central Metal ("Loan V Borrower") in the original amount of $300,000 ("Loan V").

-5-

1      14.    Lender contends that Loan V is evidenced by, among other instruments, that

2  certain Promissory Note ("Note V"), dated November 9, 2007, executed by Loan V

3  Borrower in favor of Center Bank in the original principal sum of $300,000; and that

4  certain Business Loan Agreement ("Loan Agreement V"), dated November 9, 2007,

5  executed by and between Loan V Borrower and Center Bank. Furthermore, Lender

6  contends that Loan V is secured by, among other things, that certain Deed of Trust ("Deed

7  of Trust V") dated November 9, 2007, executed by Loan V Borrower, as trustor, to

8  Chicago Title Company, as trustee, for the benefit of Center Bank, as beneficiary; and that

9  certain Commercial Security Agreement ("Commercial Security Agreement V"), dated

10  November 9, 2007, executed by and between Loan V Borrower and Center Bank. Lender

11  contends that Deed of Trust V was recorded in the Official Records on November 15,

12  2007, as Document No. 20072549900. Lender contends that Loan V is also secured by a

13  first priority unavoidable lien on all personal property of the Debtor.

14      15.    Note V, Loan Agreement V, and Deed of Trust V, and all other documents

15  which evidence, secure, or relate to Loan V, may be hereinafter collectively referred to as

16  "Loan Documents V." Lender contends that Center Bank at all relevant times is the

17  holder of Loan V, the payee of Note V, the beneficiary under Deed of Trust V, and the

18  holder of the other Loan Documents V.

19  **F.    Loan VI (No. 754138)**

20      16.    Lender contends that on or about March 6, 2007, Center Bank made Loan

21  No. 754138 to San Bernardino Central Metal, Inc. ("Loan VI Borrower") in the original

22  amount of $200,000 ("Loan VI").

23      17.    Lender contends that Loan VI is evidenced by, among other instruments,

24  that certain Promissory Note ("Note VI"), dated March 6, 2007, executed by Loan VI

25  Borrower in favor of Center Bank in the original principal sum of $200,000. Furthermore,

26  Lender contends that Loan VI is secured by, among other things, that certain Commercial

27  Security Agreement ("Commercial Security Agreement VI") dated March 6, 2007,

28  executed by Loan VI Borrower, as grantor, and Center Bank, as lender.

-6-

18.   Note VI and Commercial Security Agreement VI, and all other documents which evidence, secure, or relate to Loan VI, may be hereinafter collectively referred to as "Loan Documents VI." Lender contends that Center Bank at all relevant times is the holder of Loan VI, the payee of Note VI, and the holder of the other Loan Documents VI. Loan VI is also secured by a first priority unavoidable lien on all personal property of the Debtor.

19.   Loan Documents I-VI are sometimes collectively referred herein as the "Loan Documents." Deeds of Trust I-V are sometimes collectively referred herein as the "Deeds of Trust." Commercial Security Agreements III-VI are sometimes collectively referred herein as the "Commercial Security Agreements." Notes I-VI are sometimes collectively referred herein as the "Notes."

20.   Attached as Exhibit U to the Declaration of Ying Yong Oh, and incorporated herein by this reference, are true and correct copies of UCC Financing Statements reports, which reflect Center Bank's contention that it is in first position. Attached hereto as Exhibit V to the Declaration of Ying Yong Oh, and incorporated herein by this reference, are true and correct copies of the UCC Financing Statements held by Center Bank which reflect Center Bank's contention that it is perfected by the above-mentioned Commercial Security Agreements.

21.   Lender contends that Except for Loan VI and except as to Parcel 5 of Property B (identified in the deeds of trust as being the only real property collateral for Lender owned by Central Metal), a Receiver has been appointed over the other real properties mentioned above.

22.   The Lender contends that there are serious fraud issues in connection with the present management of the Debtor, particularly Byun whom Lender contends offered a cash bribe to a prepetition turnaround consultant (who the Lender contends terminated its contract prepetition); that $17.8 million in cash cannot be accounted for in the financial records; and that the Debtor claims that its computer financial records concerning the

-7-

1    missing $17.8 million in cash accounting were lost or destroyed in October of 2009. Mr

2    Byun and the Debtor vigorously deny these allegations.

3        23.    The Debtor contends that Lender and the prepetition turnaround consultant

4    made serious misrepresentations, breached fiduciary obligations, and otherwise committed

5    serious improprieties against the Debtor for which there may be viable causes of action

6    against such parties. The Lender and the turnaround consultant will vigorously deny these

7    allegations.

8        24.    The Debtor has hired C.T. Moffitt and Company ("CTMC") as financial

9    advisors to the Debtor. Charles T. Moffitt ("Moffitt"), a principal of CTMC, will have

10    exclusive control over the flow of cash collateral in the Debtor's case during at least the

11    period covered by this Stipulation.

12        25.    The Debtor and Lender previously entered into a stipulation authorizing the

13    Debtor to use cash collateral through February 18, 2010 pursuant to the terms and

14    conditions set forth in such stipulation, as modified by the order entered by the Court on

15    January 22, 2010 approving the stipulation.

16        NOW, THEREFORE, for and in consideration of the mutual promises stated

17    herein, and without waiving its due on transfer and due on encumbrance rights, but subject

18    to court approval, the following is hereby stipulated and agreed to by and among the

19    parties:

20

21

22

23

24

25

26

27

28

-8-

## AGREEMENT

1.    Recitals. The recitals are incorporated herein by this reference. The parties agree that the matters set forth in the recitals are true and correct. Where the recitals are based on contentions of Lender, the Debtor reserves all of its rights and claims with regard to such contentions. Where the recitals are based on contentions of the Debtor, Lender reserves all of its rights and claims with regard to such contentions.

2.    Use of Cash Collateral. Subject to the other provisions of this Stipulation, including the extension provision at paragraph 22 below, the parties hereto agree that, until the earlier of March 20, 2010, or entry of order of dismissal of this case, or until termination as set forth in paragraph 10 below, the Debtor may use Cash Collateral, on the following terms and conditions:

A.    Subject to further order of the Bankruptcy Court, or as otherwise consented to by Lender in writing, Cash Collateral may be used by the Debtor, exclusively through Moffitt (or CTMC), who will have exclusive control over the flow of cash collateral in the Debtor's case, including exclusive signing authority as to the DIP accounts for the period covered by this Stipulation for only the items identified in the budget ("Budget") stipulated to and incorporated hereat by reference and attached hereto as **Exhibit "A"**. Notwithstanding anything to the contrary herein, the Debtor shall be authorized to use Cash Collateral in accordance with the Budget, subject to a permitted deviance of up to 10% of the total expenses for any week, with any unused portions to be carried over into the following week.

B.    The Debtor shall have the right to use Cash Collateral during the period covered by this Stipulation to pay expenses which are not contained in the Budget or in amounts which are greater than as set forth in the Budget (subject to the permitted 10% deviance) with the prior written consent of Lender without the need for any further Court order. If the Lender does not consent, the Debtor reserves the right to request to schedule

-9-

1   an emergency hearing for Court authority to pay such expenses on two (2) business days'
2   notice.

3   C.      The Debtor shall pay the sum of $30,000 to Lender on each of the following dates:
4   February 22, 2010, March 1, 2010, March 8, 2010 and March 15, 2010, for payments
5   totaling $120,000, until the termination of the Stipulation pursuant to paragraph 10 of the
6   Stipulation.
7

8   D.      The Debtor shall provide Lender with weekly cash flow reports, and copies
9   of the Operating Reports as filed with the U.S. Trustee's Office.

10  E.      On no less than five (5) business days' notice following a written request
11  from Lender, the Debtor shall provide, make available and otherwise permit access to
12  such financial and operating information as representatives of Lender shall reasonably
13  request from time to time and which can reasonably be made available by Debtor (taking
14  into account such things as the Debtor's manpower, time, cost, scope of the request, etc.),
15  including, without limitation, all books and records relating to the Collateral.
16  Representatives of Lender shall be given access to the business of the Debtor during
17  normal business hours as soon as possible after no less than five (5) business days' written
18  notice.  Lender shall be entitled to have its appraisers, engineers, surveyors, and/or
19  environmental and other consultants visit and inspect the business of the Debtor during
20  normal business hours after no less than five (5) business days' written notice to the
21  Debtor.
22

23  3.      Replacement Lien.  As adequate protection for the Cash Collateral used by
24  Debtor from and after the commencement of this bankruptcy case, and only to the extent
25  that the Cash Collateral is used, Lender shall be granted a replacement lien on, and
26  security interest in, all post-petition Cash Collateral (subject to the uses as permitted by
27  this Stipulation), which replacement lien and security interest shall have the same priority,
28  extent and validity as the Lender's liens and security interests existing prepetition in the

-10-

1   Cash Collateral used by Debtor. The replacement lien and security interest granted herein

2   are valid, enforceable and fully perfected, and no filing or recordation or any other act in

3   accordance with any applicable local, state or federal law is necessary to create or perfect

4   such lien and security interest; provided, however, that upon request of Lender, Debtor

5   shall execute such security and perfection documentation as may be reasonably required

6   to create or perfect such liens under applicable nonbankruptcy law, including without

7   limitation, UCC-1 financing statements and notices to depository banks. The replacement

8   lien does not extend to avoidance actions.

9

10   4.   No Waiver. Nothing contained in this Stipulation and the Order thereon

shall be deemed or construed to waive, reduce or otherwise diminish the rights of Lender

11   under the Notes, UCC-1, other Loan Documents, or the Bankruptcy Code, including

12   seeking appointment of an examiner and/or trustee. Nothing contained in this Stipulation

13   and the Order thereon shall be deemed or construed to waive, reduce, or otherwise

14   diminish the rights, claims and defenses of the Debtor under the Notes, UCC-1, other

15   Loan Documents, or the Bankruptcy Code.

16

17   5.   No Impact on Right to Seek Other or Different Relief. Nothing contained in

18   this Stipulation and the Order thereon shall be deemed or construed to waive, reduce or

19   otherwise diminish the rights of Lender to seek additional or different adequate protection

20   of its interests under the Note, UCC-1, and other Loan Documents, or to take any other

21   action in this bankruptcy case, including, but not limited to, seeking relief from the

22   automatic stay or dismissal or conversion of this case at any time. The Debtor reserves all

23   of its rights, claims and defenses with respect to any additional or different relief

24   requested, or any action taken, by Lender in this bankruptcy case.

25

26   6.   No Admission Regarding Adequate Protection. Nothing contained in this

Stipulation and the Order thereon shall be deemed or construed to be an admission by

27   either party that Lender is or is not adequately protected.

28

-11-

43696-0003/LEGAL17548299 1

7.      Professional Fee Reserve Account.  Lender agrees that the Debtor shall make weekly payments of $25,000 each during the period covered by this Stipulation, for payments totaling $100,000, into a segregated trust account ("Professional Fee Reserve Account"), which Professional Fee Reserve Account will be maintained by Levene, Neale, Bender, Rankin & Brill L.L.P., the Debtor's bankruptcy counsel, to be used solely for the payment of the allowed fees and expenses of professionals retained, pursuant to 11 U.S.C. §§ 327, 328 or 1103(a), by the Debtor and any statutory committee appointed in the Chapter 11 Case ("Case Professionals").  Lender agrees and acknowledges that it asserts no lien or claim against any of the funds deposited into the Professional Fee Reserve Account.  The Case Professionals expressly reserve their right to be paid for all of their allowed fees and expenses from sources other than the Professional Fee Reserve Account in the event their allowed fees and expenses exceed the amount of funds in the Professional Fee Reserve Account.  No payments of fees and expenses shall be made to the Case Professionals from the Professional Fee Reserve Account unless such payments are authorized by order of the Court.  With respect to any interim fee application, Lender reserves the right to argue for a reasonable holdback on the payment of any allowed interim fees.  All fees will remain subject to a final fee application and final Court approval.  Lender reserves the right to object to the amount of the fees and expenses sought by any of the Case Professionals in this case, either on an interim basis or final basis; provided, however, that Lender shall not object to the payment of fees and expenses from the Professional Fee Reserve Account (up to $100,000) on the basis that such fees and expenses were incurred by the Case Professionals in connection with actions or positions taken that may have been adversarial to Lender.  The Debtor acknowledges that the inclusion of Paragraph 7 herein is intended only for this Stipulation.  Unless expressly agreed to by Lender in writing, the weekly payments of $25,000 into the Professional Fee Reserve Account, as described herein, shall terminate upon the termination of this Stipulation.

-12-

8.    Payments and Notices to Lender.  Any and all payments to be made hereunder shall continue to be made to Lender and mailed to the Lender at the address set forth below.

Performance due to Lender hereunder, including without limitation, notices, financial reports, and requests for approval of budget modifications, shall be made to Lender at the following address:

**Center Bank**
**Attn:  Lisa Pai**
**EVP, General Counsel & Chief Risk Officer**
**3435 Wilshire Blvd., Suite 700**
**Los Angeles, CA  90010**
**Tel:  (213) 251-2208**
**Fax:  (213) 384-2106**

In addition, copies of all notices or other communications hereunder shall be sent to Lender's counsel at the following address:

**Steven G. Polard**
**Perkins Coie LLP**
**1888 Century Park East, Suite 1700**
**Los Angeles, CA  90067**
**Tel:  (310) 788-9900**
**Fax:  (310) 788-3399**
**Email: SPolard@perkinscoie.com**

Any and all notices of or to Lender shall be copied by email to counsel for Lender.

9.    Default.  If Debtor fails to perform fully and timely any provision, term or condition of this Stipulation, Debtor shall be in default under this Stipulation.  In the event that Lender asserts a default by Debtor, it shall give written notice to Debtor of its assertion and that Lender has withdrawn its consent to the use of Cash Collateral.  Notwithstanding the foregoing, in the event Lender asserts a default hereunder, Debtor

-13-

1  shall have five (5) business days after receipt of notice from Lender to cure any such

2  default ("Cure Period"). During the Cure Period, Debtor may use Cash Collateral, and the

3  Debtor shall have the right to request to schedule an emergency hearing for continuing

4  Court authority to use Cash Collateral during the Cure Period on two (2) business days'

5  notice. Notice of any default, or any other notices required to be given hereunder, shall be

6  provided to Debtor by facsimile, personal or overnight delivery at the following addresses,

7  or at such other address(es) as Debtor may give to Lender in writing:

8

9  **Central Metal, Inc.**
   **Attn: Charles T. Moffitt and Jong Uk Byun**
10  **8201 Santa Fe Avenue**
   **Huntington Park, CA 90255**
11  **Tel: (213) 746-3680**
   **Fax: (213) 587-6006**
12

13  In addition, copies of all notices or other communications hereunder shall be sent by

14  facsimile to the Debtor's counsel at the following address:

15

16  **Monica Y. Kim**
   **Juliet Y. Oh**
17  **Levene Neale Bender Rankin & Brill LLP**
   **10250 Constellation Blvd., Suite 1700**
18  **Los Angeles, CA 90067**
   **Tel: (310) 229-1234**
19  **Fax: (310) 229-1244**
   **Emails: myk@lnbrb.com; jyo@lnbrb.com**
20

21

22  10.    Termination. This Stipulation (including Lender's consent to use of Cash

23  Collateral) shall terminate at the first to occur of (i) upon the expiration of the Cure

24  Period; (ii) Trustee's Sale after grant of relief from stay to Lender or any junior

25  lienholder; (iii) conversion, dismissal or closing of this case, for any reason whatsoever;

26  or (iv) March 20, 2010, unless such date is extended pursuant to paragraph 22 of this

27  Stipulation.

28

-14-

11. <u>Time Is Of The Essence</u>. In consideration of the facts and circumstances under which the Stipulation is executed, and the terms, conditions and provisions of this Stipulation, the parties expressly acknowledge and agree that time is of the essence and that all deadlines and time periods provided for under the Stipulation are absolute and final.

12. <u>Headings</u>. The headings set forth herein are inserted for convenience of the parties only, and shall not be used to interpret or construe or in any way affect the meaning of the terms and provisions of this Stipulation.

13. <u>Representations and Warranties</u>. The parties hereto further represent and warrant to one another as follows:

A. Each party hereto has received independent legal advice of attorneys of that party's choice with respect to the advisability of executing this Stipulation, and prior to the execution of this Stipulation by each party, that party's attorney reviewed the Stipulation and discussed the Stipulation with the party.

B. Except as expressly stated in this Stipulation, no party hereto has made any statement or representation to any other party hereto regarding any facts relied upon by said party in entering into this Stipulation, and each party hereto specifically does not rely upon any statement, representation or promise of any other party hereto in executing this Stipulation, except as expressly stated in this Stipulation.

C. Each party and its attorneys have made such investigation of the facts pertaining to this Stipulation, and all other matters pertaining thereto, as they deem necessary.

D. The terms of this Stipulation are contractual and not a mere recital.

-15-

E.    This Stipulation has been carefully read by, the contents hereof are known and understood by, and it is signed freely by each party executing this Stipulation, and each party executing this Stipulation in a representative capacity is empowered to do so.

F.    Each of the parties hereto has the full right and authority to enter into this Stipulation, subject only to the provisions of Paragraph 21 with respect to Bankruptcy Court approval, and the attorney executing this Stipulation on behalf of his or her client has the full right and authority to commit and bind his or her client to this Stipulation.

14.    Binding on Successors.  This Stipulation shall be binding on Lender and the Debtor, and any and all assigns and/or successors-in-interest to any of these persons or entities, including but not limited to, any trustee in a Chapter 11 or 7 proceeding if the case is converted, provided that Lender's consent to the use of Cash Collateral is subject to earlier termination as set forth in Paragraph 10.

15.    Use of Number and Gender.  Whenever the context requires, the masculine gender shall include the feminine or neuter, and a singular number shall include the plural, and vice versa.

16.    Neutral Construction.  This Stipulation is the product of negotiation among the parties hereto and represents the jointly conceived, bargained-for, and agreed-upon language mutually determined by the parties to express their intentions of entering into this Stipulation.  Any ambiguity or uncertainty in this Stipulation shall be deemed to be caused by, or attributable to, all parties hereto collectively.  In any action to enforce or interpret this Stipulation, the Stipulation shall be construed in a neutral manner, and no term or provision of this Stipulation, or this Stipulation as a whole, shall be construed more or less favorably to any one party, group or groups of parties, to this Stipulation.

17.    Integration.  Except as expressly provided in this Stipulation, this Stipulation is the final written expression and complete and exclusive statement of all the

-16-

43696-0003/LEGAL17548299.1

agreements, conditions, promises and covenants among the parties with respect to the subject matter hereof and supersedes all prior or contemporaneous agreements, negotiations, representations, understandings and discussions among the parties and/or their respective counsel with respect to the subject matter conveyed hereby. Any amendment or modification of this Stipulation, in order to be legally binding, must be in writing specifically referring to the Stipulation and signed by duly authorized representatives of all parties hereto.

18. No Agreement to Provide Financial Accommodation. No provision of this Stipulation shall in any way impose upon Lender any duty or obligation to provide any financing or financial accommodation to Debtor, or any other party, to collect, sell, lease or otherwise dispose of any of Lender's collateral, to proceed against any party, person, individual or entity, to proceed against or exhaust any security held by Lender or any other party, person, individual or entity, or to otherwise pursue any action, right or remedy whatsoever in Lender's power.

19. No Benefit to Non-Parties. Nothing contained in this Stipulation is intended, nor shall it be construed or deemed to, confer any rights, powers or privileges on any person, firm, partnership, corporation or other entity not an express party hereto or a successor-in-interest thereof, including, without limitation, any and all sureties and guarantors with respect to any indebtedness owed by Debtor to Lender, or otherwise. Lender reserves all of its rights under law, equity or otherwise with respect to such non-parties and/or non-successors-in-interest.

20. Counterpart Signatures. This Stipulation may be signed in counterpart.

21. Bankruptcy Court Order. This Stipulation shall be submitted forthwith to the Bankruptcy Court for approval and, in that regard, the Debtor shall give such notice and opportunity to be heard as is required under Bankruptcy Rule 4001 or other applicable law.

-17-

1    22.    Extensions. This Stipulation can be further extended by the parties in

2    writing without further order of the Bankruptcy Court.

3    IN WITNESS WHEREOF, the parties hereto execute this Stipulation re Use of

4    Cash Collateral, by and through their respective counsel, as of the date set forth opposite

5    their respective signatures.

6    DATED: February 16, 2010

PERKINS COIE LLP

7

8    By:_____

9    Steven G. Polard
Jeffrey Goodfried
10    Attorneys for Secured Creditor Center Bank

11

12

13    DATED: February 16, 2010

LEVENE NEALE BENDER RANKIN
14    & BRILL L.L.P.

15

16    By:_____ /s/ Juliet Y. Oh

Monica Y. Kim
17    Juliet Y. Oh

18    Attorneys for Debtor and Debtor in Possession
Central Metal, Inc.
19

20

21

22

23

24

25

26

27

28

-18-

| In re:<br>CENTRAL METAL, INC. | Debtor. | Chapter 11<br>2:10-bk-10642-VZ |
|---|---|---|

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
10250 Constellation Boulevard, Suite 1700, Los Angeles, California 90067.

A true and correct copy of the foregoing document described as

### SECOND STIPULATION REGARDING INTERIM USE OF CASH COLLATERAL

will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b)
in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General
Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink
to the document. On February 16, 2010 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding
and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email
address(es) indicated below:

- Andrew K Alper    aalper@frandzel.com, efiling@frandzel.com;ekidder@frandzel.com
- Mike C Buckley    mbuckley@reedsmith.com
- John H Choi    johnchoi@kpcylaw.com
- Dennis A Dressler    ddressler@dresslerpeters.com
- Jason E Goldstein    jgoldstein@buchalter.com, bkgroup@buchalter.com
- Joon M Khang    joon@khanglaw.com
- Monica Y Kim    myk@lnbrb.com
- Dare Law    dare.law@usdoj.gov
- Juliet Y Oh    jyo@lnbrb.com, jyo@lnbrb.com
- Steven G Polard    spolard@perkinscoie.com
- Richard A Solomon    richard@sgsslaw.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Scott H Yun    syun@stutman.com

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On ----------------I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or
adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class,
postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a
declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or
entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on February 16, 2010 I served the following person(s)
and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile
transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge
will be completed no later than 24 hours after the document is filed.*

*By e-mail and/or fax:*
*Parties requesting notice*
*Creditors' Committee*
*(See attached)*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                      **F 9013-3.1**

| In re:<br>CENTRAL METAL, INC. | Debtor. | Chapter 11<br>2:10-bk-10642-VZ |
| --- | --- | --- |

*By attorney service:*
*The Honorable Vincent P. Zurzolo*
*255 East Temple Street*
*Los Angeles, CA 90012*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| February 16, 2010 | Marguerite Hardin | */s/ Marguerite Hardin* |
| --- | --- | --- |
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

In re Central Metal, Inc.
Case No. 2:10-bk-10642-VZ
File No. 4516

**RSN**

Central Metal, Inc.
8201 Santa Fe Avenue
Huntington Park, CA 90255

U.S. Trustee
Attn: Dare Law, Esq.
Ernst & Young Plaza
725 S. Figueroa Street, 26th Floor
Los Angeles, CA 90017

**Counsel for Banc of America Leasing**
Andre K. Alper Esq
Banc of America Leasing & Capital
6500 Wilshire Blvd., 17th Floor
Los Angeles, CA 90048

**Counsel for Center Bank**
Steven G.F. Polard, Esq.
Perkins Coie LLP
1888 Century Park East, Ste 1700
Los Angeles, CA 90067

**Counsel for Center Capital Corp**
Dennis A. Dressler Esq
Dressler & Peters LLC
111 W. Washington St., #1900
Chicago, IL 60602

**Member of Creditors' Committee**
Noriyo Kida
13166 Alta Vista Way
Sylmar, CA 91342

**Member of Creditors' Committee**
Sun Construction
Attn: Youngt Choi, Owner
26071 Hinckley Street
Loma Linda, CA 92354

**Member of Creditors' Committee**
Bay City Trading
Attn: David Lee, President
2885 W. 232nd St
Torrance, CA 90505

**Member of Creditors' Committee**
H. West Equipment, Inc.
Attn: Kim Jaker, President
2 Strathmore
Ladera Ranch, CA 92694

**CT Moffit & Company**
137 So. Bedford Drive
Beverly Hills, CA 90212

**(Proposed) counsel for Committee**
Scott Yun, Esq.
Stutman Treister & Glatt
1901 Ave Of The Stars 12FL
Los Angeles, CA 90067-6013

**Counsel for Peoples Capital & Leasing**
Richard A. Solomon, Esq.
Solomon, Grindle, et al.
12651 High Bluff Drive, #300
San Diego, CA 92130

# CENTRAL METALS
# RSN, COMMITTEE, SECURED
# E-mail and fax numbers
# As of 1/27/2010

| Name | E-mail | Fax number |
|------|--------|-----------|
| Dare Law, Esq.<br>Office of the U.S. Trustee | Dare.law@usdoj.gov | 213-894-2603 |
| Andrew Alper, Esq.<br>Counsel for Banc of America<br>Leasing | aalper@frandzel.com | (323) 651-2577 |
| Steven G.F. Polard, Esq.<br>Counsel for Center Bank | spolard@perkinscoie.com;<br>jgoodfried@perkinscoie.com | (310) 788-3399 |
| Dennis A. Dressler, Esq.<br>Counsel for Center Capital<br>Group | ddressler@dresslerpeters.com | 312-637-9378 |
| Creditors' Committee<br>member: Noriyo Kida | nevenee@hotmail.com | |
| Creditors Committee member:<br>Sun Construction<br>Attn:  Youngt Choi | Young2000@hotmail.com | 951-940-5773 |
| Creditors committee member:<br>Bay City Trading | david@baycitytradingusa.com | 310-388-0623 |
| Creditors Committee member<br>H. West Equipment, Inc. | kimjaker@aol.com | 714-289-1776 |
| Scott Yun, Esq. Proposed<br>Committee counsel | syun@stutman.com | (310) 228-5788 |
| C.T. Moffitt & Company | ctmoffitt@ctmoffitt.com | Mr. Moffitt requests that he<br>receive nothing by fax; only by<br>e-mail |
| Richard A. Solomon, Esq.,<br>Counsel for Peoples Capital | Richard@sgslaw.com | 858-793-8263 |

*E-mails:*

Dare.law@usdoj.gov; aalper@frandzel.com; spolard@perkinscoie.com;
jgoodfried@perkinscoie.com; ddressler@dresslerpeters.com; nevenee@hotmail.com;
Young2000@hotmail.com; david@baycitytradingusa.com; kimjaker@aol.com; syun@stutman.com;
ctmoffitt@ctmoffitt.com; Richard@sgslaw.com;